[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 11 2007
THOMAS K. KAHN
CLERK

No. 06-10306

D. C. Docket No. 00-00166 CV-WLS-1

LESSIE ANDERSON, BURNICE CRETCHER,
BRENDA GETER, DEXTER JACKSON,et al.,

Plaintiffs-Appellants,

versus

CAGLE'S, INC.,
CAGLE FOODS JV, LLC,
ALL DEFENDANTS,

Defendants-Appellees.

Appeal from the United States District Court
for the Middle District of Georgia

**(June 11, 2007)**

Before DUBINA and COX, Circuit Judges, and SCHLESINGER,* District Judge.

DUBINA, Circuit Judge:

_____
*Honorable Harvey E. Schlesinger, United States District Judge for the Middle District of
Florida, sitting by designation.

Appellants, plaintiffs in the underlying action, appeal the district court's

order decertifying their collective action alleging violations of the Fair Labor

Standards Act ("FLSA") of 1938, as amended, 29 U.S.C. §§ 201-219 (2000), and

severing the defendants, Cagle's, Inc. ("Cagle's") and Cagle Foods JV, LLC

("CFJV"),[1] and its grant of summary judgment in favor of CFJV.  Having

thoroughly reviewed the record and the parties' briefs on appeal, and with the

benefit of oral argument, we affirm the district court's order decertifying the

collective action and its grant of summary judgment in favor of CFJV.  Therefore,

we need not and do not address the district court's decision to sever the

defendants.

## I.    BACKGROUND

Cagle's and CFJV (collectively "the employers") are engaged in the

business of hatching, growing, slaughtering, and processing chickens for

distribution and eventual consumption.  During the relevant time period, Cagle's

owned and operated multiple production facilities located in Georgia and

Alabama.  Prior to the relevant time period, in 1993, Cagle's partnered with

---

[1]CFJV is now known as Equity Group - Georgia Division, LLC.  For the sake of simplicity, we continue the district court's practice of referring to the company as it was known at the time the lawsuit was filed.

Executive Holdings, L.P., to create CFJV for the purpose of operating a production facility in Camilla, Georgia, previously operated solely by Cagle's.

The plaintiffs in the underlying action, some of whom are not parties to this appeal, can be divided into four distinct groups: (1) three named plaintiffs who at the time the lawsuit was filed were employed or had been employed directly by Cagle's in the company's Macon, Georgia, and/or Pine Mountain Valley, Georgia, plants ("named Cagle's plaintiffs"); (2) opt-in plaintiffs who at the time they joined the lawsuit were employed or had been employed directly by Cagle's in any of several plants, including the Macon and Pine Mountain Valley plants ("opt-in Cagle's plaintiffs"); (3) nine named plaintiffs who at the time the lawsuit was filed were employed or had been employed directly by CFJV in the Camilla plant ("named CFJV plaintiffs"); and (4) opt-in plaintiffs who at the time they joined the lawsuit were employed or had been employed directly by CFJV in the Camilla plant ("opt-in CFJV plaintiffs").[2]

At the time the lawsuit was filed, the twelve named plaintiffs worked or had worked on the employers' production lines and were paid according to a line-time method that calculates compensable time based on when the chicken to be processed reaches the production line. Pay begins when the first chicken reaches

_____

[2]When referring to all but the opt-in plaintiffs, we utilize "the named plaintiffs."

3

the production line. It ends when the last chicken reaches the production line.

As part of their jobs, the named plaintiffs are required to wear various articles of protective clothing, including smocks, hair/beard nets, gloves, and hearing protection, though the clothing required varies depending upon the particular job responsibilities. The employers require employees to arrive before line-time begins in order to don the clothing and remain after line-time ends to doff the clothing. In addition, the named plaintiffs, who are represented by the Retail, Wholesale, and Department Store Union ("RWDSU"), are required to don/doff the protective clothing in conjunction with their breaks. Prior to the adoption of the most recent collective bargaining agreement in 2003, the named plaintiffs received no compensation for donning/doffing the protective clothing, which they contend is compensable under the FLSA.

The named plaintiffs also challenged the employers' line-time pay policy to the extent that it interferes with their unpaid breaks. According to the named plaintiffs, the employers require them to remain on the production line after line-time has stopped, and breaks have begun, in order to process the last chicken on the production line. This, too, the named plaintiffs contend, violates the FLSA.

The district court initially certified the collective action and facilitated notice to would-be opt-in plaintiffs.[3]  In all, approximately 2,200 employees or former employees of Cagle's and/or CFJV joined the lawsuit.  Of those who joined, approximately 388 were later dismissed, 217 of whom the named plaintiffs themselves sought to dismiss because their claims were not commensurate with the named plaintiffs' primary claims.  Of the other 171 who were dismissed, 56 were dismissed because their claims fell outside the statute of limitations, and 115 were dismissed for failure to comply with discovery requests.

Following discovery, both Cagle's and CFJV moved to sever the claims against the respective defendants and decertify the collective action.  The district court granted the motions after finding that the putative plaintiff class members remaining were not all similarly situated.  Subsequently, both Cagle's and CFJV separately filed motions for summary judgment.  Before the district court ruled on the motions, however, the three named Cagle's plaintiffs settled their claims, and, accordingly, the district court denied as moot the summary judgment motion filed by Cagle's.  The district court subsequently granted CFJV's motion for summary

---

[3]Unlike class actions governed by Rule 23 of the Federal Rules of Civil Procedure, in which potential class members may choose to opt out of the action, FLSA collective actions require potential class members to notify the court of their desire to opt in to the action.  29 U.S.C. § 216(b) (2000).

judgment after concluding that the time the named CFJV plaintiffs spent changing in and out of their protective clothing at the beginning and end of the workday was not compensable according to section 3(d) of the Fair Labor Standards Amendments of 1949, Pub. L. No. 81-393, § 3(d), 63 Stat. 910, 911 (1949) (codified at 29 U.S.C. § 203(o) (2000)) ["§ 203(o)"]. The district court then entered judgment against the named CFJV plaintiffs on all of their claims.

The named CFJV plaintiffs filed a motion to alter or amend the judgment. Before the district court ruled on that motion, however, the named CFJV plaintiffs and all of the former opt-in plaintiffs joined in a motion to intervene to permit the opt-in plaintiffs to appeal the district court's orders decertifying the collective action and severing the defendants. The named CFJV plaintiffs and the former opt-in plaintiffs filed a notice of appeal on the same day they moved to intervene. The district court denied the motion to intervene after concluding that it lacked jurisdiction to grant the motion. The district court also denied the named CFJV plaintiffs' motion to alter or amend the judgment. Immediately thereafter, the appellants, which do not include the named Cagle's plaintiffs, amended their notice of appeal to challenge these denials as well.

## II.  ISSUES

1.     Whether we have subject matter jurisdiction over this appeal as it relates to Cagle's.

2.     Whether the district court abused its discretion when it decertified the collective action.

3.     Whether the district court erred when it granted summary judgment in favor of CFJV.[4]

## III.    STANDARDS OF REVIEW

We review a "grant of summary judgment *de novo*, drawing all [reasonable] inferences in favor of the non-moving party." *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 450 F.3d 1257, 1269 (11th Cir. 2006).  Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c). We review the district court's decision to decertify the collective action for an abuse of discretion.  *See*, *e.g.*, *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001).

## IV.    DISCUSSION

---

[4]In an order issued shortly after oral argument, we concluded that the district court abused its discretion in denying the motion to intervene. *Anderson v. Cagles, Inc.*, No. 06-10306 (11th Cir. Mar. 9, 2007) (order granting motion to intervene).  We, therefore, granted the motion to intervene and allowed the opt-in plaintiffs to submit briefs addressing decertification and severance.  *Id.*

A.    *Jurisdiction*

Cagle's challenges our jurisdiction as well as the appellants' standing to name Cagle's as a party to this appeal.  Essentially, Cagle's takes the position that all claims against it were resolved when the district court adopted the settlement agreement between Cagle's and the named Cagle's plaintiffs.

The arguments Cagle's presents fail to acknowledge or address the named and opt-in CFJV plaintiffs' contention, which they have maintained throughout the underlying action, that Cagle's was their employer in conjunction with CFJV and, thus, liable to them directly for FLSA violations.  *See* 29 U.S.C. § 203(d), (g) (2000) (defining, respectively, "employer" and "employ"); 29 U.S.C. § 216(b) (2000) (prescribing a private right of action against employers who violate the FLSA).  Although the outcome of this opinion renders it unnecessary to address the issue of joint liability, the merits of the arguments on appeal have no bearing on the threshold question of our jurisdiction.  *See, e.g., Jackson v. Cintas Corp.*, 425 F.3d 1313, 1316 (11th Cir. 2005) (describing jurisdiction as a "threshold issue").

Cagle's focuses on the appellants' ability to challenge the district court's adoption of the settlement agreement and the effects of the district court's severance order, which regrettably lacks explanation of both the district court's

8

rationale and intent. Cagle's does not offer any legal argument explaining why, assuming the appellants' joint liability theory is correct, this court nevertheless would lack jurisdiction. The argument Cagle's offers regarding the named and opt-in CFJV plaintiffs' standing is similarly lacking. The employers' alleged joint liability is directly at issue. Therefore, we have jurisdiction over Cagle's, and the named and opt-in CFJV plaintiffs have standing to name Cagle's as a party to this appeal. *See* 28 U.S.C. § 1291 (2000) (prescribing appellate jurisdiction over final decisions of district courts); *Knight v. Alabama*, 14 F.3d 1534, 1556 (11th Cir. 1994) ("[A] litigant who is aggrieved by [a] judgment or order may appeal." (internal quotation & citation omitted)).

B.    *Decertification*

The district court engaged in a two-stage analysis to determine whether a collective action was proper. At the first stage, the district court determined that the plaintiffs were similarly situated based primarily on the named plaintiffs' "detailed allegations," which established essentially "the same job requirements and almost identical treatment" among the group of employees defined in the collective-action notice the district court ultimately approved. Importantly, the allegations were supported to some extent by the employers' "admissions, and other documentary evidence." The district court, therefore, certified the collective

9

action, but only conditionally, noting the possibility of later decertifying the collective action upon a proper motion filed by the employers "[a]fter discovery is substantially completed and the matter is ready for trial."

Following discovery, the employers separately filed motions to decertify the collective action. The district court granted the motions after determining that the opt-in plaintiffs were not similarly situated to the named plaintiffs. Specifically, the court found that "[n]amed plaintiffs essentially employed by a single employer, based on the discovery before the Court, cannot fairly and adequately represent the variously assigned employees, the wide variety of work assignments and varied compensation structures affecting the purported class." In its analysis, the district court contrasted the employers' independent identities, locations, and work forces; the various methods by which the putative class members were compensated; and the protective clothing the putative class members were required to wear.

The appellants contend that the district court applied an incorrect standard for determining whether the opt-in and named plaintiffs are similarly situated. Although they do not challenge the district court's two-stage approach, they do challenge the district court's view of the facts and go so far as to accuse the district court of exaggerating the distinctions among the putative class members. Their arguments lack merit.

To maintain a collective action under the FLSA, "plaintiffs must demonstrate that they are 'similarly situated.'" *Hipp*, 252 F.3d at 1217; *see also* 29 U.S.C. § 216(b) (2000). The appellants rely for the most part on *Hipp*, as well as an earlier case, *Grayson v. K Mart Corp.,* 79 F.3d 1086 (11th Cir. 1996), both of which discuss the "similarly situated" standard as well as the appropriate analysis for making the necessary determination.

In *Grayson*, we interpreted the FLSA's collective action provision to require plaintiffs alleging age discrimination to "demonstrat[e] a reasonable basis for their claim of class-wide discrimination . . . by making substantial allegations of class-wide discrimination, that is, detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary."[5] 79 F.3d at 1097 (quotations & citations omitted). In *Hipp*, we followed *Grayson*, but we also acknowledged, albeit somewhat implicitly, that the lenient standard we adopted in the *Grayson* opinion may be most useful when making a certification decision early in the litigation before discovery has been completed. *Hipp*, 252 F.3d at 1217-19. *Hipp* suggested that district courts deciding whether to certify a collective action engage in a two-stage analysis as described in detail by the Fifth

---

[5]The Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621-634 (2000), expressly incorporates the FLSA's opt-in collective action provision. 29 U.S.C. § 626(b).

Circuit Court of Appeals in *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207 (5th Cir. 1995),[6] from which the *Hipp* court quoted at length.  *See Hipp*, 252 F.3d at 1218.

In *Mooney*, the court noted that at the initial stage the district court's decision to certify a class is based primarily on pleadings and affidavits.  54 F.3d at 1213-14.  In this respect, the first stage resembles the analysis conducted in the *Grayson* decision.  *See Grayson*, 79 F.3d at 1097-99.[7]  Accordingly, at the initial stage, courts apply a "fairly lenient standard" for determining whether the plaintiffs are truly similarly situated.  *Mooney*, 54 F.3d at 1214, *quoted in Hipp*, 252 F.3d at 1218.

At the second stage, which is "typically precipitated by a motion for 'decertification' by the defendant usually filed after discovery is largely complete and the matter is ready for trial[,] . . . the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question."  *Mooney*, 54 F.3d at 1214, *quoted in Hipp*, 252 F.3d at 1218. The "similarly situated" standard at the second stage is less "lenient" than at the first, as is the plaintiffs' burden in meeting the standard.  *See Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1103 (10th Cir. 2001) (describing the

---

[6]*Mooney* was overruled in part on other grounds by *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S. Ct. 2148 (2003).

[7]The *Grayson* opinion did not mention *Mooney* or the two-stage approach.

"similarly situated" standard at the second stage as "stricter" than that applied at the first stage and noting several relevant factors courts consider, including "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant[s] [that] appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations"), *cert. denied*, 536 U.S. 934, 122 S. Ct. 2614 (2002). Exactly how much less lenient we need not specify, though logically the more material distinctions revealed by the evidence, the more likely the district court is to decertify the collective action. As a district court in this circuit has correctly observed, although the FLSA does not require potential class members to hold identical positions, *see Grayson*, 79 F.3d at 1096, the similarities necessary to maintain a collective action under § 216(b) must extend "beyond the mere facts of job duties and pay provisions." *White v. Osmose, Inc.*, 204 F. Supp. 2d 1309, 1314 (M.D. Ala. 2002). Otherwise, "it is doubtful that § 216(b) would further the interests of judicial economy, and it would undoubtedly present a ready opportunity for abuse." *Id.*

We also need not specify how plaintiffs' burden of demonstrating that a collective action is warranted differs at the second stage. It is sufficient to conclude, again quite logically, that at the second stage plaintiffs *may*–the ultimate decision rests largely within the district court's discretion–not succeed in

13

maintaining a collective action under § 216(b) based solely on allegations and affidavits, depending upon the evidence presented by the party seeking decertification.

The appellants direct the court to evidence in the record they contend undermines the district court's conclusion. Whether the record contains evidence arguably supporting the appellants' position is not dispositive, however, and whether we would have come to the same conclusion as the district court is not relevant. "A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous." *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1309 (11th Cir. 2001). We recognize in this instance that the district court had "a range of choice[,] . . . and so long as its decision does not amount to a clear error of judgment we will not reverse even if we would have gone the other way had the choice been ours to make." *McMahan v. Toto*, 256 F.3d 1120, 1128 (11th Cir. 2001).

We have thoroughly reviewed the record in this case and conclude that the district court's view of the evidence is reasonable, and its findings, therefore, are

14

not clearly erroneous.[8]  Furthermore, the district court's decision to decertify the collective action based on the distinctions noted in its opinion does not constitute legal error.  *See Mooney*, 54 F.3d at 1216 (concluding that the district court did not abuse its discretion when it decertified a plaintiff class it had earlier conditionally certified).[9]  Finally, the district court's decision is not at odds with either *Grayson* or *Hipp*, neither of which involved the degree or nature of disparities present in

---

[8]Among the numerous distinctions, we find particularly important evidence that, unlike all of the named plaintiffs, many of the opt-in plaintiffs are not unionized.  A key defense in this case, indeed the very defense that resulted in the district court granting summary judgment in favor of CFJV, requires the existence of a collective bargaining agreement.  29 U.S.C. § 203(o).  Obviously, Cagle's and CFJV could not raise this defense against the non-union opt-in plaintiffs, a point that clearly undermines the appellants' contention that the named plaintiffs could adequately represent all of the opt-in plaintiffs.  In addition, as a practical matter, the availability of defenses to some but not all of the putative class members "clearly poses significant case management concerns." *In re School Asbestos Litigation*, 789 F.2d 996, 1011 (3d Cir. 1986) (concluding that "[w]hen, and if, the district court is convinced that the litigation cannot be managed, decertification is proper").  And, we rarely interfere with the district court's case management decisions.  *See*, *e.g.*, *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1366 (11th Cir. 1997) ("[D]istrict courts enjoy broad discretion in deciding how best to manage the cases before them.").

[9]We need not address the appellants' contention that the district court was required to craft subclasses of plaintiffs.  Although the plaintiffs suggested to the district court the creation of subclasses as a way to effectively manage the collective action, they failed to argue or cite legal authority for the proposition that taking such action was compulsory.  Therefore, they have waived this issue.  *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331-35 (11th Cir. 2004) (discussing this circuit's frequently applied rule that we will not consider "an issue . . . raised for the first time in an appeal").

the instant case.[10] In conclusion, we hold that the district court did not abuse its discretion when it decertified the collective action.

C.    *29 U.S.C. § 203(o)*

The district court granted CFJV's motion for summary judgment after determining that the named CFJV plaintiffs' claims were foreclosed by § 203(o). Section 203(o) excludes from the definition of "hours worked," in the context of the FLSA's minimum wage and maximum hours provisions,[11] "time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee." § 203(o). The named CFJV plaintiffs, the only plaintiffs remaining in light of our affirmance of the district

---

[10]*Grayson* and *Hipp* are distinguishable for relevant reasons not already mentioned. Unlike in this case, in *Grayson*, which concerned claims of age discrimination, we were faced with a broad policy applied to a discreet group of employees (i.e. older store managers) emanating from the highest levels of the defendant corporation, control of which was not in dispute. 79 F.3d at 1097-99. *Hipp* was similar in this regard. 252 F.3d at 1219 (noting that, "[l]ike the plaintiffs in *Grayson*, . . . Plaintiffs in this case all held the same job title, and they all alleged similar, though not identical, discriminatory treatment"). Finally, and importantly, both *Hipp* and *Grayson* sought to determine whether the district court abused its discretion when it *certified* a collective action, not, as in the case before us, *decertified* a collective action. As we have previously noted, "denials of class certification usually stand," and "reliance on the possibility of a reversal of the court's certification decision is ordinarily not reasonable." *Armstrong v. Martin Marietta Corp.*, 138 F.3d 1374, 1381 (11th Cir. 1998).

[11]29 U.S.C. §§ 206, 207 (2000), respectively.

court's decertification order, contend that § 203(o) is inapplicable because it does not address the donning/doffing of the protective clothing at issue. They further contend that the employers' failure to compensate for the donning/doffing of the protective clothing was not a "custom or practice under a bona fide collective bargaining agreement" (at least, prior to the adoption of the 2003 collective bargaining agreement ("CBA"), which specifically addresses compensation for "clothes changing").

1.      *Changing Clothes*

Relying on a fairly recent opinion from the Ninth Circuit Court of Appeals squarely addressing this same issue, the named CFJV plaintiffs contend that the act of donning/doffing the garments at issue does not constitute clothes "changing," and the garments themselves do not constitute "clothes." *See Alvarez v. IBP, Inc.*, 339 F.3d 894, 904-05 (9th Cir. 2003), *aff'd on other grounds*, 546 U.S. 21, 126 S. Ct. 514 (2005).[12] We disagree.

---

[12]The named CFJV plaintiffs devote a great deal of attention to the Supreme Court's opinion affirming the Ninth Circuit in *Alvarez*. The Supreme Court's opinion in *Alvarez* did not discuss issues relevant to this appeal, however. The Court limited *certiorari* review to the question "[w]hether walking that occurs between compensable clothes-changing time and the time employees arrive at or depart from their actual work stations constitutes non-compensable 'walking . . . to and from the actual place of performance of the principal activity' within the meaning of Section 4(a)" of the Portal-to-Portal Act of 1947, 29 U.S.C. § 254(a) (2000). Petition for Writ of Certiorari, *Alvarez*, 546 U.S. 21 (No. 03-1238); *see also Alvarez*, 543 U.S. 1144, 125 S. Ct. 1292 (2005) (granting *certiorari* review). Thus, the Court did not address the application of § 203(o). *See generally Alvarez*, 546 U.S. 21, 126 S. Ct. 514.

17

It is by now axiomatic that we interpret a statute with the aim of giving effect to the drafters' intent. *See*, *e.g.*, *United States v. Ballinger*, 395 F.3d 1218, 1237 (11th Cir. 2005). We do this, first, by reference to the plain meaning of the statute's language, based on the words' "ordinary, contemporary, common meaning." *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1266 (11th Cir. 2006) (quoting *Perrin v. United States*, 444 U.S. 37, 42, 100 S. Ct. 311, 314 (1979)).

The dictionary defines "clothes" as "clothing," which itself is defined as "covering for the human body or garments in general: all the garments and accessories worn by a person at any one time." Webster's Third New International Dictionary 428 (unabridged) (1986) ["Webster's"]. This broad definition, we believe, is consistent with the common understanding of the word, and we see no need to distinguish uniforms from protective clothes, for example, worn in the workplace.

We recognize that there may be limits to the application of § 203(o) based on the nature or purpose of the garments at issue. Other courts have drawn distinctions between general protective clothing, like the garments we are concerned with in this case, and specialized protective clothing, such as plastic shields, steel mesh gloves or, perhaps, spacesuits. *See Alvarez*, 339 F.3d at 903-05 (describing as nonunique "protective gear such as hardhats and safety goggles";

18

holding that the donning/doffing of these items required only *de minimis* time and effort and therefore were noncompensable; and noting later that the broad dictionary definition would encompass all manner of items worn on the body, including "armor, spacesuits, riot gear, or mascot costumes"); *Reich v. IBP, Inc.*, 38 F.3d 1123, 1125-26 (10th Cir. 1994) (concluding that the donning/doffing of "standard safety equipment" such as "a pair of safety glasses, a pair of ear plugs and a hard hat" was not "work" under the FLSA whereas "the donning, doffing, and cleaning of the special protective gear used by the knife-workers" was). We need not decide whether this distinction is legitimate in the context of § 203(o). The district court in the instant case concluded that the employees required to wear more specialized garments were compensated for the time necessary to don/doff these items, and the named CFJV plaintiffs do not challenge this finding. In addition, aside from their contention that § 203(o) does not apply to any protective clothing, the named CFJV plaintiffs do not attempt to draw any finer distinctions. Thus, we conclude that the garments the named CFJV plaintiffs were required to don/doff to perform their job duties fit squarely within the commonly understood definition of "clothes" as that term is used in § 203(o).

The definition of "change" is similarly broad. It means "to make different," that is "to modify in some particular way but short of conversion into something

19

else." Webster's 373. Thus, we see no logic in appellants' unsupported argument that "'changing clothes' can only refer to the specific act of arriving at work in one set of clothes, removing those clothes, and putting on a different set of clothes." [Appellant's Br. at 26]. Nothing in the statute's language suggests that its application turns on whether one must fully disrobe or exchange one shirt, for example, for another. Therefore, we conclude that one need not exchange clothes to change clothes for the purpose of applying § 203(o).

Our interpretation of the term "changing clothes" is consistent with that of the agency responsible for administering the FLSA. In a recent advisory opinion, the Administrator of the Wage and Hour Division of the Department of Labor stated that, for the purpose of applying § 203(o), clothes "include items worn on the body for covering, protection, or sanitation." Fair Labor Standards Act, U.S. Dep't of Labor, Wage & Hour Div. Advisory Op. Ltr. No. FLSA2002-2 (June 6, 2002) ("Advisory Opinion I"). The named CFJV plaintiffs contend that the Administrator's opinion is not entitled to deference because it conflicts with earlier Administrator advisory opinions that expressly excluded protective clothing from § 203(o)'s coverage. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 446 n.30, 107 S. Ct. 1207, 1221 n.30 (1987) ("An agency interpretation of a relevant provision which conflicts with the agency's earlier interpretation is

20

entitled to considerably less deference than a consistently held agency view." (internal quotation omitted)). *Contrast* Advisory Opinion I *with* Fair Labor Standards Act, U.S. Dep't of Labor, Wage & Hour Div. Advisory Op. Ltr. (Jan. 15, 2001); Fair Labor Standards Act, U.S. Dep't of Labor, Wage & Hour Div. Advisory Op. Ltr. (Dec. 3, 1997). While less deference may be called for, the most recent advisory opinion is entitled to some deference just the same. Moreover, this most recent opinion provides a far more detailed rationale for its conclusion than the previous opinions. Thus, all things being equal, the more recent opinion is a great deal more persuasive than the earlier ones.

Relying on the Ninth Circuit's opinion in *Alvarez*, the named CFJV plaintiffs contend that the term "clothes" must be construed against the employers. We acknowledge that our conclusion conflicts with the Ninth Circuit's opinion.

The Ninth Circuit premised its conclusion in large part on its view that § 203(o) constitutes an "exemption" from FLSA requirements. *Alvarez*, 339 F.3d at 905. Consequently, the Ninth Circuit held that § 203(o) must be "narrowly construed against . . . employers" and should not be applied "except in contexts *plainly and unmistakably* within the given exemption's terms and spirit." *Id.* (quotations omitted) (citing *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, 80 S. Ct. 453, 456 (1960); *Mitchell v. Kentucky Fin. Co.*, 359 U.S. 290, 295, 79 S. Ct.

21

756, 759 (1959); *Auer v. Robbins*, 519 U.S. 452, 462, 117 S. Ct. 905, 912 (1997);

*Klem v. County of Santa Clara*, 208 F.3d 1085, 1089 (9th Cir. 2000); *Do v. Ocean*

*Peace, Inc.*, 279 F.3d 688, 691 (9th Cir. 2002); *Dole v. W. Extension Irrigation*

*Dist.*, 909 F.2d 349, 351 (9th Cir. 1990)).

None of the cases on which the Ninth Circuit relied held that § 203(o)

constituted an exemption under the FLSA.  Indeed, none of these cases even

discussed § 203(o).  Rather, they concerned § 13 of the FLSA, 29 U.S.C. § 213

(2000), which is titled, appropriately, "Exemptions."  Had Congress sought to

bestow upon § 203(o) the same status as the exemptions set forth in § 213, it easily

could have amended § 213 instead of § 203, which is titled, not coincidentally,

"Definitions."  Therefore, although this court once, in *dicta*, referred to § 203(o) as

an exemption, *Mitchell v. Se. Carbon Paper Co.*, 228 F.2d 934, 937 (5th Cir.

1955),[13] having today addressed the issue for the first time, we conclude that §

203(o) is not an exemption under the FLSA but is instead a definition that limits

the scope of the FLSA's key minimum wage and maximum hour provisions.

The statute's plain meaning aside, our conclusion in this regard also finds

support in the circumstances surrounding passage of the provision that became §

---

[13]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), we adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

203(o).  In 1947, approximately nine years after the FLSA was enacted to eliminate "conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers," 29 U.S.C. § 202 (2000), Congress passed the Portal-to-Portal Act, 29 U.S.C. §§ 251-262 (2000).  The Portal-to-Portal Act aimed to countermand judicial interpretations of the FLSA that Congress found to evidence a

> disregard of long-established customs, practices, and contracts between employers and employees, thereby creating wholly unexpected liabilities, immense in amount and retroactive in operation, upon employers with the results that, if said Act as so interpreted or claims arising under such interpretations were permitted to stand, (1) the payment of such liabilities would bring about financial ruin of many employers and seriously impair the capital resources of many others . . .; (2) the credit of many employers would be seriously impaired; (3) there would be created both an extended and continuous uncertainty on the part of industry, both employer and employee, as to the financial condition of productive establishments and a gross inequality of competitive conditions between employers and between industries; (4) employees would receive windfall payments, including liquidated damages, of sums for activities performed by them without any expectation of reward beyond that included in their agreed rates of pay; (5) there would occur the promotion of increasing demands for payment to employees for engaging in activities no compensation for which had been contemplated by either the employer or employee at the time they were engaged in; [and] (6) voluntary collective bargaining would be interfered with and industrial disputes between employees and employers and between employees and employees would be created.

29 U.S.C. § 251 (2000).

23

Congress's efforts to curtail employee-protective interpretations of the FLSA continued when the FLSA was amended two years later to add, among other things, what would become § 203(o). As the sponsor of the relevant amendment explained to fellow representatives, the purpose of the amendment was to "avoid[] another series of incidents which led to the portal-to-portal legislation." 95 Cong. Rec. 11,433 (daily ed. Aug. 10, 1949) (comments of Representative Herter). Essentially, he explained, the amendment would strengthen the employer-protective Portal-to-Portal Act by closing a "loophole" therein. *Id.* Consequently, construing § 203(o) narrowly against employers as an FLSA "exemption" contravenes not only basic tenets of statutory construction but also the readily apparent intent of the legislators who approved the amendment's language.

In conclusion, we hold that § 203(o) applies to the clothes changing activities at issue in this case.

2. *Custom or Practice Under a Bona Fide CBA*

The named CFJV plaintiffs contend that the pay policy at issue does not qualify as a "custom or practice under a bona fide" CBA, as § 203(o) requires, because, although the terms of their employment during the relevant period were governed by a CBA, prior to 2003, the CBAs in effect never addressed the relevant compensation issue. Moreover, they contend that the parties to the CBA

never discussed the matter. According to the named CFJV plaintiffs, "[a] custom or practice 'under a collective-bargaining agreement' of not compensating employees for changing clothes or washing cannot arise absent some actual negotiation or agreement between the union and employer on that subject."

The named CFJV plaintiffs contend that the district court erred by construing the CBAs and the evidence related to the existence of negotiations in favor of CFJV. Rather than address their allegations of error directly, we simply assume that the CBAs never addressed the compensation policy with respect to clothes changing and that the parties to the relevant CBAs never discussed the policy. We nevertheless conclude that the named CFJV plaintiffs' view of the law is incorrect.

Relying again on a common sense understanding of the statute's language, we believe that a policy concerning compensation (or noncompensation, as the case may be) for clothes changing, written or unwritten, in force or effect at the time a CBA was executed satisfies § 203(o)'s requirement of a "custom or practice under a bona fide" CBA.[14] *See Turner v. City of Philadelphia*, 262 F.3d 222, 225-27 (3d Cir. 2001) (disposing of an argument identical to that presented by the

[14]We do not intend to suggest that a policy implemented after the parties executed a CBA would satisfy § 203(o)'s custom or practice requirement during the effective period of that particular CBA. That question is not before us.

25

named CFJV plaintiffs and concluding that a "custom or practice" existed based on a pre-existing policy notwithstanding an absence of formal negotiations). Absence of negotiations cannot in this instance equate to ignorance of the policy. Rather, it demonstrates acquiescence to it. This conclusion does not conflict with our decision in *Hoover v. Wyandotte Chems. Corp.*, 455 F.2d 387, 389 (5th Cir. 1972), which merely noted a history of bargaining as evidence of a custom or practice.

For the purpose of our inquiry, we are concerned with the CBAs executed in 1997, 2000, and 2003, which were in effect during the relevant time period. As previously noted, the named CFJV plaintiffs' arguments focus on the language of the CBAs and the absence of negotiations. They do not contend that they lacked notice of the relevant compensation policy when executing the 1997, 2000, or 2003 CBAs. Nor do they contend that the CBAs in effect during the relevant time period were somehow not "bona fide." Having resolved the relevant factual questions in the named CFJV plaintiffs' favor, we conclude that CFJV's policy of not compensating employees for clothes changing activities satisfies § 203(o)'s "custom or practice" requirement.

Therefore, the district court correctly granted CFJV's motion for summary judgment. Section 203(o) forecloses the named CFJV plaintiffs' claim that the

26

FLSA required CFJV to compensate them for time spent donning/doffing the protective clothing at issue. Summary judgment against the named CFJV plaintiffs was proper also with respect to their alleged claim against Cagle's, Inc., which is derivative of their claim against CFJV. Consequently, it is not necessary to address the named CFJV plaintiffs' challenge to the district court's decision to sever the claims against the employers.

D.    *Miscellany*

The district court's opinion granting summary judgment did not explicitly address all of the claims the named CFJV plaintiffs alleged in their complaint. Specifically, the district court did not discuss the claims related to uncompensated break-time clothes changing and uncompensated time on the production line. The district court's judgment nevertheless disposed of these claims.

In their initial brief on appeal, the named CFJV plaintiffs cursorily assign as error the district court's failure to address these claims as well as other claims they conceded at oral argument were not alleged in their complaint.[15] Their treatment of this issue, which arises essentially as an aside in the context of a broader introduction to their brief on appeal, is insufficient for the purpose of appellate

---

[15]We offer no opinion regarding the sufficiency of the complaint, though we note that the complaint alleged as grounds for the FLSA claim only the compensation policies mentioned in this opinion.

review. *See*, *e.g.*, *United States v. Jernigan*, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003) (holding that the appellant had waived an ostensible challenge to certain evidentiary rulings when he had failed to "devote[] a discrete section of his argument to claims regarding the evidence of his prior bad acts; instead, each mention of this evidence is undertaken as background to the claims he does expressly advance or is buried within those claims").

## V. CONCLUSION

Having determined that jurisdiction is proper, we conclude that the district court did not abuse its discretion when it decertified the collective action. Furthermore, CFJV's motion for summary judgment was properly granted. Therefore, the district court's orders decertifying the collective action, granting summary judgment, and entering judgment in favor of CFJV are affirmed.

**AFFIRMED.**