CLAY, Circuit Judge,
dissenting.
I agree with the majority that the donning and doffing activities at issue constitute “changing clothes” for purposes of Section 203(o), that the “Local Working Conditions” provision in the Collective Bargaining Agreement (“CBA”) does not preclude the formation of unwritten customs or practices, and that the donning and doffing here is a principal activity such that Plaintiff may be entitled to payment for walking time. However, I disagree with the majority that no material questions of fact remain as to whether the Union knowingly acquiesced to nonpayment for donning and doffing time such that this custom or practice became an implied term of the CBA.
Parties are not required to engage in formal negotiations to create a custom or practice under a bona fide CBA; rather, “a particular custom or practice can become *621 an implied term of a labor agreement through a prolonged period of acquiescence.” Turner v. City of Philadelphia, 262 F.3d 222, 226 (3d Cir.2001) (citing Detroit & Toledo Shore Line R.R. v. United Transp. Union, 396 U.S. 142, 153-54, 90 S.Ct. 294, 24 L.Ed.2d 325 (1969)); see also Anderson v. Cagle’s Inc., 488 F.3d 945, 958-59 (11th Cir.2007) (“[A] policy concerning compensation (or noncompensation, as the case may be) for clothes changing, written or unwritten, in force or effect at the time a CBA was executed satisfies § 203(o )’s requirement of a custom or practice under a bona fide CBA.”) (internal citation and quotation marks omitted). “In determining whether such acquiescence was present, the Court can consider whether the issue of payment for the contested time had been discussed on prior occasions.” Figas v. Horsehead Corp., No. 06-1344, 2008 WL 4170043, at *14 (W.D.Pa. Sept.3, 2008) (citing Kassa v. Kerry, Inc., 487 F.Supp.2d 1063, 1071 (D.Minn.2007) (“Indeed, to the extent that the union members never raised the issue even among themselves, this may suggest that they did not knowingly acquiesce in [the employer’s] policy of non-payment for clothes-changing time.”)).
In the instant case, Defendant never compensated its employees for time spent donning and doffing clothes during the nineteen years it operated the Rossville facility. The issue of donning and doffing is not addressed in any of the CBAs between Defendant and the Union, it was never raised during bargaining between the Union and Defendant, and no employee has ever filed a grievance to obtain compensation for changing time. Plaintiff submitted declarations from five Union officials who took part in the bargaining negotiations of nearly every CBA since the inception of the Rossville plant, stating that they were unaware that time spent donning and doffing was compensable and that they would have raised the issue had they known. However, Teresa West, Local Union Executive Board member from 1998 to 2003 and Local Union Financial Secretary from 2000-2003, submitted a declaration stating that, on at least one occasion, the Union considered including payment for changing time in its preliminary list of contract proposals. She added that the Union “never pushed hard for compensation for donning and doffing time” and instead emphasized other issues. (West Decl. ¶ 11).
The district court found West’s declaration to “undercut[] Plaintiffs argument that the employees did not knowingly acquiesce to Defendant’s policy.” (Dist. Ct. R.E. 264 at 28). The district court further found that: (1) Plaintiff found out from Union steward Alicia Williams that employees had not been getting paid for donning and doffing for a long time, and (2) the Union had institutional knowledge of the nonpayment based on its representation of employees at the Lancaster plant in a lawsuit seeking compensation for clothes-changing time.
However, the district court erred by determining that no issues of fact remain as to whether the Union knowingly acquiesced to the nonpayment. In coming to its conclusion that the Union knowingly acquiesced, the district court credited West’s declaration stating that, on at least one occasion, the Union considered including payment for changing time in its preliminary list of contract proposals. However, West’s declaration is disputed by the declarations of five Union employees stating that the Union lacked knowledge of the right to payment. While the district court was not necessarily required to find West more credible than the other five Union employees to credit West’s declaration— since it is theoretically possible that West was privy to a conversation that the other *622 five were not — weighing the evidence and determining the credibility of each witness are tasks for the jury. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (“Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.”). Furthermore, it is unclear whether West would have been in a position to know about what the Union considered including in the CBA, since she participated in preparing for contract negotiations but was not an official member of the Union bargaining team. Meanwhile, the five employees who submitted declarations on behalf of Plaintiff all participated in the bargaining negotiations that resulted in the CBAs. Accordingly, the competing declarations at the very least create an issue of fact for a jury.
Likewise, the decision of whether to credit Williams’ statement that she told Plaintiff that employees had not been getting paid for donning and doffing for a long time is reserved for a jury. Moreover, the question of whether the Union had “institutional knowledge” based on its representation of employees of the Lancaster plant who sued Defendant in 2004 for compensation for clothes-changing time is one of disputed fact. While the Union is part of the same international organization as the Union that represented the Lancaster employees, the Union that represents the Rossville employees negotiates a CBA that applies exclusively to the Rossville plant.[1] Rather than viewing the evidence in the light most favorable to Plaintiff, the district court made a number of inferences that a jury should decide. Accordingly, issues of fact remain for the jury in determining whether the Union knowingly acquiesced to nonpayment for donning and doffing time.
Defendant argues that even if the Union did not know of their right to assert a claim for time spent donning and doffing, the Union acquiesced to the custom or practice based on their prolonged silence. Plaintiff argues that silence and inaction are not enough to show that the Union knowingly acquiesced to the nonpayment. Defendant cites a number of dictionary definitions of acquiescence indicating that acquiescence can occur through silence and inaction. See, e.g., Blacks Law Dictionary 25 (8th ed. 2004). Defendant also cites two cases from the Eleventh and Third Circuits in which the courts found that the plaintiffs had acquiesced to the custom or practice of nonpayment for donning and doffing. See Turner, 262 F.3d at 227; Cagle’s, 488 F.3d at 958-59. In Turner, the court found a custom or practice of nonpayment for donning and doffing time where the employer demonstrated that: (1) the employer had not paid its employees for their donning and doffing time for a period exceeding thirty years; (2) every collective-bargaining agreement between the employer and the employees had been silent as to the issue of compensation for donning and doffing time; (3) compensation for the employees’ donning and doffing time had been proposed by the president of the employees’ union; (4) the union had not made a request for such compensation during formal collective-bargaining negotiations; and (5) the union had never filed a grievance or demanded arbitration based on the employees’ lack of compensation for donning and doffing time. Tur *623 ner, 262 F.3d at 225. In Cagle’s, the court found that a custom or practice of nonpayment existed where the CBA was silent as to the issue of compensation for changing time, and the parties never discussed the issue. Cagle’s, 488 F.3d at 958-59. The court found that “[a]bsence of negotiations cannot in this instance equate to ignorance of the policy. Rather, it demonstrates acquiescence to it.” Id. at 959.
Contrary to Defendant’s argument, even the cases that Defendant cites require acquiescence to be knowing. The point of disagreement in the two cases is whether knowledge can be inferred from prolonged silence. In Turner, the parties stipulated to the fact that the union had discussed the issue internally. In Cagle’s, the court interpreted the union’s prolonged silence as evidence that the union knew about the right and chose to abandon it. The more prudent course would be for this Court to follow the approach of Turner rather than Cagle’s by finding that silence and inaction — without some indication that the Union had discussed the issue — are not enough to show that the Union knew about its right to payment and chose to abandon it.
Accordingly, I would find that the Union’s silence over the relevant nineteen year period does not create a custom or practice at the Rossville plant, since a question of fact remains as to whether the Union knew that it had a right to payment. Therefore, I respectfully dissent.

. Defendant also claims that the Union had institutional knowledge based on an article on the AFL-CIO's website, the weekly paystubs that employees receive reflecting the hours of payment, and the Union’s successful negotiation for payment for lunch. However, as with the evidence listed above, a jury, not a judge, should weigh the strength of this evidence.