**Rudy RIFE, Plaintiff,**

v.

**FRONTON HOLDINGS, LLC, d/b/a Casino Miami, and Dave Jonas, Defendants.**

**CASE NO. 16–21570–CIV– LENARD/GOODMAN**

United States District Court, S.D. Florida.

Signed November 18, 2016

Brian Howard Pollock, Fairlaw Firm, Miami, FL, for Plaintiff.

Jennifer Saltz Bullock, Stearns, Weaver, Miller, Weissler, Alhadeff & Sitterson, Fort Lauderdale, FL, Jorge Freddy Perera, Stearns Weaver Miller, Miami, FL, for Defendants.

## ORDER DENYING PLAINTIFF'S MOTION FOR CERTIFICATION OF COLLECTIVE ACTION AND FOR PERMISSION TO SEND COURT SUPERVISED NOTICE (D.E. 42)

JOAN A. LENARD, UNITED STATES DISTRICT JUDGE

**THIS CAUSE** is before the Court on Plaintiff's Motion for Certification of Collective Action and for Permission to Send Court Supervised Notice, ("Motion," D.E. 42), filed September 9, 2016. Defendants Fronton Holdings, LLC, d/b/a Casino Miami, and Dave Jonas filed a Response on October 14, 2015, ("Response," D.E. 49), to which Plaintiff filed a Reply on October 21, 2016, ("Reply," D.E. 52). Upon review of the Motion, Response, Reply, and the record, the Court finds as follows.

## I. Background

This is an action to recover unpaid overtime wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. (See Compl., D.E. 1.) The Complaint alleges that Plaintiff worked for Defendants as an hourly, non-exempt employee

from November 2012 to April 2016 at different positions within the security department at Casino Miami. (Id. ¶¶ 1, 8.) Between 2013 and 2015, Plaintiff was paid an hourly wage of between $14.00 and $21.00 while classified as a "supervisor" and/or "assistant manager." (Id. ¶ 10.) Plaintiff's pay was capped (and would not exceed) his hourly rate of pay multiplied by 40 hours per week, even though he routinely worked more than 40 hours per week. (Id. ¶¶ 10, 12–13.) However, if Plaintiff worked less than 40 hours in a work week, Defendants would only pay him for the actual hours worked. (Id. ¶ 14.)

The Complaint alleges that other individuals employed by Defendants as "supervisors" or "assistant managers" were subject to the same pay practices. (Id. ¶¶ 12–13.)

> The class of similarly situated employees employed by Defendants who may become Plaintiffs in this action are current and former employees of Defendant who held the position of "Supervisor" and/or "Assistant Manager" whom Defendants paid an hourly rate of pay and/or salary, who had their pay reduced when they worked less than 40 hours a week, and who did not receive overtime pay for working over 40 hours in a workweek.

(Id. ¶ 15.) The Complaint alleges that "Defendants failed and refused to pay Plaintiff and their other similarly situated current and former employees overtime wages calculated at time and one-half of his/their regular rate of pay for all hours worked over 40 hours in a given workweek." (Id. ¶ 19.)

On September 9, 2016, Plaintiff filed the instant Motion for Certification of Collective Action and for Permission to Send Court Supervised Notice. (D.E. 42.) It seeks, inter alia, an Order granting conditional certification of a collective action under the FLSA, 29 U.S.C. § 216(b), for the following proposed class:

> All persons who are currently, or who were, employed by Fronton Holdings, LLC d/b/a Casino Miami and/or Dave Jonas from May 3, 2013 to the present as a "manager", "supervisor", or other similarly titled position, either directly by Defendants or through any of their subsidiaries or affiliated companies.

(Mot. at 2.) The Motion also seeks authorization to send notice of this Action to all potential Class Members by (1) email, (2) U.S. Mail initially and again via a postcard halfway through the Notice Period, (3) telephone, (4) requiring Defendants to post notice in a breakroom or other conspicuous location frequented by potential Class Members, and (5) requiring Defendants to include notice and consent to join forms in potential Class Members' paychecks or paystubs. (Id. at 15–20.)

In support of his Motion, Plaintiff submits his own Declaration, (D.E. 42–1), and the Declarations of opt-in Plaintiffs Yumay D. Rodriguez Garcia, ("Garcia Decl.," D.E. 27–1), Joseph R. Rosales, ("Rosales Decl.," D.E. 31–1), and Angel Luis Fernandez, ("Fernandez Decl.," D.E. 46–1).[1] Garcia states that she was a "manager" in Casino Miami's marketing department. (Garcia Decl. ¶¶ 4, 7(a).) Rosales and Fernandez

---

**1.** On September 6, 2016, a potential fourth opt-in Plaintiff, Carlos Alberto Sanchez, filed a Notice of Consent to Join. (D.E. 38.) On October 20, 2016, Defendants filed a Motion to Strike Sanchez's Notice for failing to file a supporting affidavit or declaration as required by the Court's Notice of Court Procedure in Actions Brought Under the Fair Labor Stan-

dards Act, (D.E. 12), by the October 17, 2016 deadline for joinder of parties and amendment of pleadings. (D.E. 51.) Plaintiff failed to respond to Defendants' Motion to Strike Sanchez's Notice, and on November 8, 2016, the Court granted by default the Motion to Strike Sanchez's Notice. (D.E. 56.)

each state that they were "managers" in Casino Miami's slots department. (Rosales Decl. ¶¶ 4, 7(a); Fernandez Decl. ¶¶ 4, 7(a).) Garcia, Rosales, and Fernandez state that they were subject to the same pay practices and rules as Plaintiff, as they routinely worked over 40 hours per week but were not paid overtime compensation. (Garcia Decl. ¶¶ 5, 7(a), (f); Rosales Decl. ¶¶ 5, 7(a), (f); Fernandez Decl. ¶¶ 5, 7(a), (f).) They each state that they worked with other individuals classified as "managers," and that although they are unaware if those other individuals would be interested in bringing a claim against Defendants for unpaid wages, they "would think that most current employees would be concerned about joining this case out of fear of being retaliated against." (Garcia Decl. ¶ 7(f); Rosales Decl. ¶ 7(f); Fernandez Decl. ¶ 7(f).)

## II. Legal Standard

Section 216(b) of the FLSA authorizes one or more employees to bring a collective action against their employer for unpaid minimum wages or unpaid overtime "for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). "Unlike a Rule 23 class action, in which each person falling within a certified class is bound by the judgment unless he or she opts out, each putative plaintiff must affirmatively opt into a Section 216(b) class action." Bennett v. Hayes Robertson Grp., Inc., 880 F.Supp.2d 1270, 1282 (S.D. Fla. 2012) (citing De Leon–Granados v. Eller and Sons Trees, Inc., 497 F.3d 1214 (11th Cir. 2007)).

"The Eleventh Circuit suggests that district courts use a two-stage process in deciding whether to create an opt-in class and to facilitate notice." Id. (citing Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1219 (11th Cir. 2001)). The first stage is the "conditional certification" or "notice" stage. See Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1260 (11th Cir. 2008). "The second stage is triggered by an employer's motion for decertification." Id. at 1261.

The Court is currently at the first stage of the collective action framework. At this stage, "a district court determines whether other similarly situated employees should be notified." Id. "A plaintiff has the burden of showing a 'reasonable basis' for his claim that there are other similarly situated employees." Id. (citing Anderson v. Cagle's, Inc., 488 F.3d 945, 952 (11th Cir. 2007); Grayson v. K Mart Corp., 79 F.3d 1086, 1097 (11th Cir. 1996); Haynes v. Singer Co., 696 F.2d 884, 887 (11th Cir. 1983)). The Plaintiff must show that he and those who desire to opt in are " 'similarly situated' with respect to their job requirements and with regard to their pay provisions." Dybach v. Fla. Dep't of Corrs., 942 F.2d 1562, 1567–68 (11th Cir. 1991). This standard is "not particularly stringent." Morgan, 551 F.3d at 1260 (citing Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1214 (11th Cir. 2001)); see also Anderson, 488 F.3d at 953 (describing the standard as "fairly lenient"). Although the district courts have broad discretion at the notice stage, "there must be more than 'only counsel's unsupported assertions that FLSA violations [are] widespread and that additional plaintiffs would come' " forward. Id. (quoting Haynes, 696 F.2d at 887). A plaintiff need not show that his position is "identical" to the position held by any other putative class member and "may meet this burden by making detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary." Grayson, 79 F.3d at 1096–97 (internal quotation marks and citation omitted).

## III. Discussion

Defendants argue that Plaintiff (1) has failed to establish that the putative collec-

tive action members are "similarly situated" to him, and (2) even if he has so established, the Court should reject Plaintiff's Notice proposal. (D.E. 49.)

With respect to similarly situated employees, Defendant argues that: (1) Plaintiff's proposed class is overbroad, (id. at 7–8); (2) Plaintiff has offered no proof of a company-wide practice of classifying supervisors and managers as exempt, (id. at 8–10); (3) Plaintiff and the opt-ins are not similarly situated, (id. at 10–13); (4) the scope of the proposed class is broader than the class alleged in the Complaint, (id. at 13–14); and (5) the relevant period for the proposed class is overbroad, (id. at 14).

■ In determining whether conditional certification is appropriate, the Court may consider whether the proposed class is overbroad. See Davis v. Charoen Pokphand (USA), Inc., 303 F.Supp.2d 1272, 1278 (M.D. Ala. 2004); Mackenzie v. Kindred Hosps. E., L.L.C., 276 F.Supp.2d 1211, 1221 (M.D. Fla. 2003). Plaintiff's Motion seeks to certify the following class:

> All persons who are currently, or who were, employed by Fronton Holdings, LLC d/b/a Casino Miami and/or Dave Jonas from May 3, 2013 to the present as a "manager", "supervisor", or other similarly titled position, either directly by Defendants or through any of their subsidiaries or affiliated companies.

(Mot. at 2.) Defendants argue that this definition is overbroad because: (1) it contains a mix of exempt and non-exempt supervisory employees; (2) includes all levels of supervisors and managers up to and including the casino's General Manager, and also includes non-operational positions, such as Accounting Manager and Staff Counsel/Risk Manager; and (3) includes employees of every department of the operations with entirely different job duties. (Id. at 7.) Plaintiff does not directly address Defendants' argument as to overbreadth.

Defendants presented the Affidavit of Gevork "Greg" Khachatrian, Vice President of Finance and Administration for Casino Miami, who averred that classifying employees as exempt or non-exempt under the FLSA is determined on an individual employee and position basis. (D.E. 49–2 ¶ 5.) He stated that "Casino Miami has not—and does not—have a standard compensation policy or practice of classifying all of its employees whose job title included the words 'manager' or 'supervisor' as exempt." (Id. ¶ 11.) "Casino Miami currently has or has had during the relevant period at least ten employees in supervisory positions who are and have always been hourly [and] non-exempt." (Id.) Among the managerial/supervisory positions that are non-exempt are the Bar Supervisor, Janitorial Supervisor, Assistant Janitorial Supervisor, and Maintenance Supervisor, and certain employees who serve as Parking Supervisor, Poker Supervisor, Player's Club Supervisor, and Cage Supervisor. (Id.)

■ "[T]he mixing of both exempt and non-exempt employees in a class does not lend itself to proceeding by way of a conditional class because it is overbroad." Tussing v. Quality Resources, Inc., No. 8:09–cv–1833–T–26AEP, 2009 WL 4350253, at *3 (M.D. Fla. Nov. 25, 2009) (citing Butler–Jones v. Sterling Casino Lines, L.P., No. 6:08–cv–1186–ORL–35DAM, 2008 WL 5274384, *7 (M.D. Fla. Dec. 18, 2008)). "In companies where individuals holding a particular job title are classified as exempt employees and others, non-exempt, . . . the desirability of using conditional certification has not been established." Id. (quoting Tyler v. Payless Shoe Source, Inc., No. 2:05–cv–33F (WO), 2005 WL 3133763, at *5–6 (M.D. Ala. Nov. 23, 2005)).

In Tussing, the plaintiff sought conditional certification of a class of call-center employees holding various job titles, such as "Sales Representatives, Verification Representatives, Flippers, and Customer Service Representatives." Id. at *1. The plaintiff argued that all of these workers were similarly situated. Id. The Court denied conditional certification because "both exempt and non-exempt employees may be members of the proposed conditional class as defined[.]" Id. at *3.

Similarly, in Butler–Jones, the plaintiff sought conditional certification of a class of casino employees who were paid on a per-shift basis and/or who had worked hours not compensated at the federal minimum wage and/or who had worked unpaid overtime. 2008 WL 5274384, at *7. The court determined that this definition would include virtually all employees, including exempt employees, and was therefore overbroad. Id.

Perhaps more analogous to the case at bar, the plaintiff in Tyler sought conditional certification[2] of a class all current and former Store Managers and Manager Trainees at Payless Shoe Source. 2005 WL 3133763, at *1. She alleged that Payless violated the FLSA by improperly classifying the Store Managers and Store Manager Trainees as salaried employees exempt from overtime requirements. Id. at *2. Payless presented evidence that some Store Managers were classified as exempt employees while others were non-exempt, and others fluctuated depending on their specific duties during any given quarter. Id. at *5, *6. The court deemed this evidence to be "significant[ ]," id. at *6, and denied conditional certification, id. at *7.

Here, too, Plaintiff's broad class definition—encompassing every Casino Miami employee with "manager" or "supervisor" in his or her title—includes both exempt and non-exempt employees. (See Khachatrian Aff. ¶ 11.) Casino Miami employees at least ten individuals in supervisory or managerial positions that are hourly, non-exempt employees. (Id.) The Court finds that the proposed class is overbroad and therefore that conditional certification is improper. See Tussing, 2009 WL 4350253, at *3; Butler–Jones, 2008 WL 5274384, *7; Tyler, 2005 WL 3133763, at *5–6; see also Davis, 303 F.Supp.2d at 1278 (noting that even if the court had not denied conditional certification on other grounds, it would likely find the class of employees of a chicken-processing plant to be overbroad because it includes employees with "very different job titles and responsibilities"); Mackenzie, 276 F.Supp.2d at 1221 (noting that even if the court had not denied conditional certification on other grounds, it would likely find the class of registered pharmacists to be overbroad because the "proposed class includes a diverse group of pharmacists with different titles and job duties distinct from, or unknown to, the plaintiff").

Additionally, Plaintiff has not demonstrated that he and the opt-ins are similarly situated with respect to job requirements. See Dybach, 942 F.2d at 1567–68 ("[T]he district court should satisfy itself that there are other employees of the [ ]employer who desire to 'opt-in' and who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions.") (emphasis added). "Although the similarly situated standard

---

**2.** Although the court did not explicitly state that the plaintiff was seeking "conditional" certification, the title of the plaintiff's motion—"Motion to Facilitate Class Notice Pursuant to 29 U.S.C. § 216(b)"—indicates that the case was at the conditional certification stage. See Morgan, 551 F.3d at 1260–61 ("The first step of whether a collective action should be certified is the notice stage.").

is a low threshold, a showing of similarity requires more than generalized allegations." Robinson v. Dolgencorp., Inc., No. 5:06–cv–122–Oc–10GRJ, 2006 WL 3360944, at *5 (M.D. Fla. Nov. 13, 2006) (citing Hipp, 252 F.3d at 1219 (citing Grayson, 79 F.3d at 1097)).

Here, the opt-ins' Declarations are vague and entirely unhelpful with respect to job requirements. In fact, the opt-ins fail to describe any of their job requirements, so it is impossible for the Court to determine whether they are similarly situated to Plaintiff. (See Garcia Decl., D.E. 27–1; Rosales Decl., D.E. 31–1; Fernandez Decl., D.E. 46–1.). The closest the opt-ins' come to describing their job requirements is vaguely stating that their job requirements do not include hiring, firing, or deciding anyone else's rate of pay. (Garcia Decl. ¶ 7(a), (f); Rosales Decl. ¶ 7(a), (f); Fernandez Decl. ¶ 7(a), (f).) This is simply insufficient to meet the "modest factual showing" required at this stage. See Grayson, 79 F.3d at 1097 ("The plaintiffs may meet [their] burden, which is not heavy, by making ... detailed allegations supported by affidavits which 'successfully engage defendants' affidavits to the contrary.' "). Consequently, the Court is constrained to conclude that Plaintiff has failed to satisfy his burden "of showing a 'reasonable basis' for his claim that there are other similarly situated employees." Morgan, 551 F.3d at 1260 (citing Anderson, 488 F.3d at 952; Grayson, 79 F.3d at 1097; Haynes, 696 F.2d at 887); see also Dybach, 942 F.2d at 1567–68.[3]

## IV. Conclusion

Accordingly, it is **ORDERED AND ADJUDGED** that Plaintiff's Motion for Certification of Collective Action and for Permission to Send Court Supervised Notice is **DENIED.**

**3.** The Court notes that, although Defendants do not bear the burden on this issue, the Affidavits submitted by Defendants do describe Plaintiff's and the opt-ins' job requirements and persuasively demonstrate that Plaintiff and the opt-ins are not similarly situated with regard to job requirements. (See Aff. of Stephen Blank, D.E. 49–1 ¶ 8 (describing Plaintiff's job duties as Security Supervisor/Manager and Assistant Security Manager as "supervising security guards in the performance of their security job duties, training security employees, counseling and disciplining security employees, evaluating the performance of employees in the department, addressing, reporting and resolving customer concerns and incidents (i.e., theft or slip and falls), authorizing jackpot payouts, interacting with Miami–Dade County police officers that worked on the property, preparing reports required by state regulations, verifying and authorizing jackpot payouts, overseeing access to the property, managing the exclusion process, conducting shift meetings, managing the schedules of employees in the department, authorizing overtime hours and preparing payroll for the department, among other job duties."); id. ¶ 12 (explaining that as a Slots Shift Manager, Rosales "was responsible for overseeing Slot Attendance in the performance of their job duties on the casino floor. He conducted shift meetings, trained employees, disciplined employees, made schedule changes and resolved customer concerns and issues. All of Mr. Rosales' job duties were specific to the slots department, which is responsible for the maintenance and integrity of the slot machines at Casino Miami."); Khachatrian Aff., D.E. 49–2 ¶ (explaining that as Cage Supervisor, Garcia "trained employees, evaluated their performance, disciplined employees, investigated and either resolved employee and customer issues or escalated them to the manager of the department, served as a point of contact for the jai alai wagering system vendor, prepared daily deposits, maintained proper staffing levels and ensuring the casino's bank had enough cash at all times, among other job duties.") id. ¶ 9 (explaining that as a Poker Supervisor, Fernandez oversaw the operation of the Poker Room at Casino Miami, supervising, training and evaluating employees in their department, hiring employees and maintaining proper levels of staffing and had supervisory involvement in promotions and programming for the poker tables.").

**DONE AND ORDERED** in Chambers at Miami, Florida this 18th day of November, 2016.