Terri A. REICH, on behalf of herself and others similarly situated, Plaintiff,

v.

HOMIER DISTRIBUTING COMPANY, INC., d/b/a Homier Mobile Merchants, Defendant.

No. 1:04–CV–415.

United States District Court, N.D. Indiana, Fort Wayne Division.

March 22, 2005.

---

Dan Getman PHV, New Paltz, NY, Garry G. Geffert PHV, Attorney at Law, Martinsburg, WV, for Plaintiff.

Christopher K. Robertson, Jackson & Kelly PLLC, Martinsburg, WV, Matthew J. Elliott, Beckman Lawson LLP, Fort Wayne, IN, Wendy W. Davis, Beckman Lawson LLP, Fort Wayne, IN, for Defendant.

### MEMORANDUM OF DECISION AND ORDER

WILLIAM C. LEE, District Judge.

## I.  INTRODUCTION

Terri A. Reich was formerly employed as a "sales partner" by Homier Distributing Company, Inc. In this suit, she alleges that Homier violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, by failing to properly pay her for overtime.   Currently, Reich is the only plaintiff, but she also wishes to proceed on behalf of other sales partners similarly situated to her.   Accordingly, she moves to expand this suit into a "collective action," as contemplated by the FLSA. For the reasons given below, her motion will be DENIED.

## II.  FACTS[1]

Homier's business is selling merchandise, predominantly tools, at traveling

---

**1.**  The facts are drawn from various affidavits and declarations presented by the parties.   In the interest of brevity, the facts (which appear to be undisputed) are recited here without citation to the record.

shows throughout the country. These sales shows, which can last anywhere from one day to three weeks, are conducted by a "team" consisting of a "manager" and several "sales partners." Under the direction of the manager, the sales partners perform a variety of duties, including conducting inventory, arranging merchandise for sale, operating cash registers, assisting customers, loading and unloading merchandise on company trailers, and cleaning up at the end of the show. Reich worked as a sales partner from May 2002 to October 2003.[2]

Homier conducts four different types of shows, which are classified by the amount of merchandise involved, staffing level, and length. A "one-day show" involves two trailers of Homier merchandise, is staffed by three to five sales partners, and lasts (appropriately enough) one day. An "express show" involves six or seven trailers of merchandise, is staffed by about five sales partners, and lasts two days. A "road show" also requires six or seven trailers of merchandise, but is staffed by up to ten sales partners and lasts four days. The final, catch-all category is "tent sales," which last anywhere from four days to three weeks; the record does not reveal the amount of merchandise or number of sales partners involved.

Generally, a team works the same type of shows repeatedly; that is, one team puts on five or six "one-day shows" every week, another team puts on two "express shows" every week, and so forth. However, occasionally a team will vary its routine and put on a different type of show, and during the summer many teams put on multiple "tent sales." Also, individual sales partners are often transferred to different teams; accordingly, any particular sales partner is likely to work all types of shows during his or her employment.

As we shall soon see, a sales partner's responsibility for loading unsold merchandise onto trailers at the end of each show is a crucial issue in this lawsuit; thus, it must be described here in some detail. Loading is performed by two sales partners. The first sales partner uses a forklift or similar device to arrange pallets of merchandise and put them on the trailer. The forklift operator must stack the pallets "high and tight" (as high as can fit in the trailer, and in a square column), and must use discretion to stack the pallets safely-for instance, by putting the heaviest pallets on the bottom of a stack to stabilize it. The forklift operator then deposits the stack on the edge of the trailer.

A second sales partner works inside the trailer, using a pallet jack to arrange the stacks of pallets within the trailer. This sales partner must use discretion to arrange the stacks safely, such as by ensuring that the overall load is balanced in the trailer. He or she must also use discretion to decide which of the heavy objects, such as tractors and other farm implements, should be tied down, chocked, or otherwise secured.

Each trailer takes one or two hours to load, so the entire loading process can range from a couple hours (for a one-day show) to an entire day (for a road show or tent sale). At each show, the manager decides which sales partners will be responsible for the loading function, and sales partners sometimes rotate in and out of this job at the same show, particularly at the longer shows or on hot days. Thus, over the course of several shows, many different sales partners are likely to end up loading the trailers at some point.

---

**2.** At any given time, Homier has twenty to twenty-seven teams traveling the country putting on shows. From June 2001 to August 2004, Homier employed 1,171 sales partners to staff these teams.

## III. STANDARD OF REVIEW

■ The FLSA provides for an action "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). When an employee's suit is on behalf of "other employees similarly situated," it is known as a "collective" or "representative" action. *See Harkins v. Riverboat Servs., Inc.*, 385 F.3d 1099, 1101 (7th Cir.2004). A collective action is different from the class action procedure set forth in Federal Rule of Civil Procedure 23; for instance, potential plaintiffs can only join a collective action by "opting in," whereas a class action will include any potential plaintiff who fails to "opt out." *Id.* (citing Fed.R.Civ.P. 23). More importantly for our purposes, a plaintiff who wishes to institute a collective action need not satisfy the various elements of Rule 23 (such as numerosity, typicality, commonality, and so forth), but must only make a "threshold showing" that she is "similarly situated" to the employees she wishes to represent.[3] *E.g., Carter v. Glasgo*, No. 1:02–CV–01812, 2003 U.S. Dist. LEXIS 23398 at *8–9 (S.D.Ind. December 23, 2003).

■ If the named plaintiff makes this showing, the court then enjoys discretion to manage the collective action in various ways. The court can order the defendant to produce names and addresses of potential plaintiffs, and it can authorize the named plaintiff to send notices to the putative class informing them of the suit and their opportunity to opt in. *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 169–71, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989). As the Supreme Court put it, once a collective action is approved, "the court has a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." *Id.* at 170–71, 110 S.Ct. 482.[4]

## IV. DISCUSSION

Reich contends that she and other sales partners—all 1,171 of them, as far as one can tell from her briefs—routinely worked more than forty hours a week, but were not paid overtime wages as required by the FLSA. 29 U.S.C. § 207(a)(1). She argues that since she and the other sales partners "had the same essential duties and were all subject to the same practices and policies," they are similarly situated for purposes of a collective action. (Pl.'s Mot. at 2.)

---

**3.** A handful of courts in other jurisdictions impose a second requirement on plaintiffs, in addition to the "similarly situated" requirement: evidence that "there are other employees ... who desire to 'opt-in'" to the proposed class. *Davis v. Charoen Pokphand (USA), Inc.*, 303 F.Supp.2d 1272, 1275 (M.D.Ala.2004); *see also, e.g., Dybach v. Fl. Dep't of Corr.*, 942 F.2d 1562, 1567–68 (11th Cir.1991); *Cash v. Conn Appliances, Inc.*, 2 F.Supp.2d 884, 897 (E.D.Tex.1997). No court in the Seventh Circuit has explicitly adopted or rejected this extra requirement. *See Taillon v. Kohler Rental Power, Inc.*, No. 02 C 8882, 2003 WL 2006593, **3–4, 2003 U.S. Dist. LEXIS 7275, at *8–9 (N.D. Ill. April 25, 2003).

Homier urges this Court to adopt the extra requirement, and argues that Reich has failed to produce evidence of other employees who wish to opt in. Reich responds that the extra requirement conflicts with the FLSA's language and should not be adopted. But there is no need for the Court to decide this novel question. As detailed *infra*, Reich fails to meet the universal requirement of showing that she is similarly situated to the class she wishes to represent, so the extra requirement would be superfluous even if this Court chose to adopt it.

**4.** While *Hoffmann–La Roche* involved the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, rather than the FLSA, it is controlling here because the ADEA explicitly incorporates the FLSA's collective-action procedure. 493 U.S. at 167–68, 110 S.Ct. 482.

Homier does not deny (at least for now) that it failed to pay its sales partners overtime wages when they worked more than forty hours. Rather, its primary argument is that the sales partners fall into one of the FLSA's many exemptions: the "loader exemption."

■ The FLSA does not apply to "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service." 29 U.S.C. § 213(b)(1). The Secretary of Transportation's authority extends to "employee[s] of a private motor carrier whose duties include loading and unloading motor vehicles 'so that they may be safely operated on the highways of the country,'" commonly known as "loaders." [5] *Vaughn v. Watkins Motor Lines, Inc.*, 291 F.3d 900, 904 (6th Cir.2002) (quoting 29 C.F.R. § 782.5(a), and citing *Levinson v. Spector Motor Serv.*, 330 U.S. 649, 673, 67 S.Ct. 931, 91 L.Ed. 1158 (1947)). An employee qualifies as a loader if she "has responsibility when ... motor vehicles are being loaded, for exercising judgment and discretion in planning and building a balanced load or in placing, distributing, or securing the pieces of freight in such a manner that the safe operation of the vehicles on the highways in interstate ... commerce will not be jeopardized." *Id.* (quoting 29 C.F.R. § 782.5(a)). However, to qualify as a loader, an employee "need not devote all or even the majority of their time to safety-affecting activities"—rather, "it is enough that a loader devote a substantial part of his time to activities affecting the safety of operation." *Troutt v. Stavola Bros., Inc.*, 107 F.3d 1104, 1107 (4th Cir.1997) (citing *Levinson*, 330 U.S. at 674, 681, 67 S.Ct. 931).

In other words, whether Reich and other sales partners are entitled to overtime pay under the FLSA will primarily depend on whether they spent "a substantial part" of their time exercising discretion to safely load merchandise onto Homier's trailers. Unfortunately, there is no precise test for what constitutes a "substantial part" of an employee's time. *Compare Troutt*, 107 F.3d at 1106 (holding that two uses of discretion in three years was "de minimus" and did not make employee a loader), *with* Wage & Hour Opinion Letter of March 5, 2001, 2001 WL 1558956 (opining that employees who used discretion once every week or two were loaders). It is also less than clear exactly what constitutes an exercise of discretion. *See Vaughn*, 291 F.3d at 905 (holding that employees used enough discretion to be considered loaders, even though supervisor checked their work and sometimes told them how to load the freight); Wage & Hour Opinion Letter of March 5, 2001, 2001 WL 1558956 (opining that it is "not clear" that employees who simply load items on a trailer the same way every time exercise sufficient discretion to be loaders).

The upshot is that determining whether Reich or any other sales partner qualifies as a loader (and is therefore exempt from the FLSA) will require a highly individualized, fact-specific inquiry. Extensive discovery will be necessary to ascertain whether each sales partner was ever responsible for loading, and if so, (1) how often; (2) for how long; and (3) how much of that loading required the exercise of discretion, if any. As Homier aptly notes, "if this matter proceeds as a collective action, it will be impossible to come up with a class-wide determination on liability." (Def.'s Mem. in Opp'n at 16.)

■ Many other courts, both in this circuit and others, have declined to find po-

---

**5.** Homier asserts, and Reich does not dispute, that Homier is a "private motor carrier." *See*   49 C.F.R. § 390.5.

tential class members similarly situated where liability depended on an individual determination of each employee's duties. *See Pfaahler v. Consultants for Architects, Inc.*, No. 99 C 6700, 2000 WL 198888, at *2 (N.D.Ill. February 8, 2000) ("the court would be required to make a fact-intensive, individual determination as to the nature of each claimant's employment relationship with CFA.... Where this is the case, certification of a collective action under the FLSA is inappropriate."); *Holt v. Rite Aid Corp.*, 333 F.Supp.2d 1265, 1274–75 (M.D.Ala.2004) (denying collective action where individualized inquiries required would obviate "the economy of scale envisioned by the FLSA collective action procedure"); *Mike v. Safeco Ins. Co. of Am.*, 274 F.Supp.2d 216, 220–21 (D.Conn.2003) ("Because the proof in this case is specific to the individual, Mike has not provided evidence of a common thread binding his proposed class of employees."); *Sheffield v. Orius Corp.*, 211 F.R.D. 411, 413 (D.Or. 2002) ("[a collective] action dominated by issues particular to individual plaintiffs can not be administered efficiently"); *Morisky v. Pub. Serv. Elec. and Gas Co.*, 111 F.Supp.2d 493, 499 (D.N.J.2000) ("The individual nature of the inquiry required make[s] collective treatment improper in this case."); *see also Clausman v. Nortel Networks, Inc.*, IP 02–0400–C–M/S, 2003 WL 21314065, at *4–5 (S.D.Ind. May 1, 2003). Likewise, Homier's liability to any particular sales partner will turn on a set of facts specific to that individual, and thus Reich's motion for a collective action must be denied.

Reich makes two attempts to avoid this result. First, she cites *Moss v. Crawford & Co.*, 201 F.R.D. 398, 410–11 (W.D.Pa. 2000), for the proposition that "[v]ariations among employees in job duties ... do not defeat collective action status as long as each potential member raises the common claim of failure of [the] defendant to pay overtime." (Pl.'s Mot. at 4 (incorrectly labeled as p. 2.)) However, *Moss* does not stand for that proposition. The *Moss* court approved a collective action because, *inter alia*, it found that the job duties of one plaintiff would not differ from those of another plaintiff in the same position; thus, "the court will be able to coordinate the exemption issue by ascertaining the duties of each respective *position.*" *Moss*, 201 F.R.D. at 410–11 (emphasis added). *Moss* has no application here, where all of the potential plaintiffs shared the same position but had differing job duties.

Second, Reich suggests that the notice to potential plaintiffs can be worded in a way that weeds out anyone subject to the loader exemption. She proposes adding the following paragraph to the notice:

> The class does not include two types of workers. (1) The class does not include any employee who was certified to operate a forklift and who operated a forklift on Homier's trucks as part of their usual job duties. (2) The class does not include any employee who regularly operated a pallet jack to load merchandise on Homier's trucks.

This paragraph is highly unlikely to make administering a collective action in this case any more efficient, as it is overinclusive. For instance, a sales partner who only loaded trailers once every week or two would probably not consider loading "part of [her] usual job duties" and thus would opt in; however, some authority suggests that she would be exempt nonetheless. *See* Wage & Hour Opinion Letter of March 5, 2001, 2001 WL 1558956. The proposed notice also fails to differentiate between those who exercised discretion to safely load trailers and those who did not. In other words, Reich's proposed notice fails to ameliorate the central problem; although it may discourage a few exempt employees from joining the suit, extensive, individualized discovery will still be neces-

sary with respect to every plaintiff who opts in.

In sum, Reich fails to show that she and the other sales partners are similarly situated, because application of the loader exemption to any particular sales partner will depend on that individual's specific duties. The individual discovery required to ascertain those duties would destroy "the economy of scale envisioned by the FLSA collective action procedure," *e.g., Holt,* 333 F.Supp.2d at 1274–75, and Reich fails to show that the notice can be fashioned in a way that solves this problem. Therefore, Reich's motion must be denied.

## V. CONCLUSION

For the reasons given above, Reich's Motion to Approve Collective Action Notice (Docket # 34) is DENIED.[6]

---

**6.** The caption of this case currently identifies the plaintiff as "Terri A. Reich, on behalf of herself and others similarly situated." As this case will not proceed as a collective action, that caption is incorrect. The Clerk is therefore ORDERED to redesignate the plaintiff as simply "Terri A. Reich."