Lisa RINDFLEISCH; Tiffany Melendez; Michelle Gentile; Laurie Baker; and Christina Nelmes, on behalf of themselves and others similarly situated, Plaintiffs,

v.

GENTIVA HEALTH SERVICES, INC., Defendant.

Civil Action No. 1:10–cv–03288–SCJ.

United States District Court,
N.D. Georgia,
Atlanta Division.

Signed Nov. 4, 2013.

Abigail E. Shafroth, Christine E. Webber, Cohen Milstein Hausfeld & Toll, Washington, DC, Gilda A. Hernandez, The Law Offices of Gilda A. Hernandez, PLLC, Apex, NC, Samuel L. Starks, Martin & Jones, Atlanta, GA, Walter M. Wood, H. Forest Horne, Jr., Martin & Jones, Raleigh, NC, J. Douglas Richards, Cohen Milstein Hausfeld & Toll, PLLC, New York, NY, for Plaintiffs.

A. Michael Weber, Littler Mendelson, PC, New York, NY, Michael S. McIntosh, Littler Mendelson, PC, McLean, VA, Steven Wright Likens, Littler Mendelson, P.C., Memphis, TN, Angelo Spinola, Anne Marsha Mellen, Lisa A. Schreter, Littler Mendelson, P.C., Atlanta, GA, Christine E. Webber, Cohen Milstein Hausfeld & Toll, Washington, DC, for Defendant.

## ORDER

STEVE C. JONES, District Judge.

This matter is before the Court on Gentiva Health Services, Inc.'s ("Gentiva") Motion to Amend and Certify the Court's July 26, 2013 Order for Interlocutory Appeal [Doc. No. 634]. For the reasons explained in this order, Gentiva's motion is **DENIED.**

## I. FACTUAL AND PROCEDURAL BACKGROUND

Gentiva provides home healthcare services to patients throughout the United States [Doc. No. 508, 1].[1] To provide these services, Gentiva employs registered nurses and physical or occupational therapists to provide in-home healthcare to Gentiva's patients (collectively "Clinicians") [id.]. Since December of 2008, Gentiva has paid the majority of its Clinicians on a pay per-visit plan (the "PPV Plan") [Doc. No. 586, 4–5]. Under the PPV Plan, Clinicians are paid a set fee for a "routine visit" to a patient's home ("visit fees") [id. at 14]. These visit fees do not vary based on the time it takes Clinicians to complete a specific in-home visit [id. at 15]. In addition, Clinicians under the PPV Plan are also paid on what Gentiva describes as a "flat rate" for non-visit related work ("non-visit fees") [id. at 19]. In setting the amount of non-visit fees, Gentiva factors in the amount of time it takes Clinicians to perform a specific non-visit related activity [id.].

Gentiva, believing the PPV Plan constituted a "fee basis" payment, classified all of its Clinicians compensated under the PPV Plan as professional employees exempt from overtime compensation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. [id. at 10].

On May 10, 2010, former Clinicians Lisa Rindfleisch, Tiffany Melendez, Michelle Gentile, Laurie Baker, and Christina Nelmes (collectively "named plaintiffs") filed this action, on behalf of themselves and other similarly situated individuals, against Gentiva seeking overtime wages under the FLSA [Doc. No. 1, 1].[2] In sup-

---

1. The Court acknowledges that Plaintiffs' statement of material facts has been filed under seal. However, the Court's orders are not generally sealed. Therefore, the Court considers itself free to refer, in this unsealed order, to any matters identified in the sealed materials.

2. The complaint also asserts claims under New York and North Carolina law [id.]. These

port of their FLSA claim, named plaintiffs assert that the PPV Plan, because the amount of the non-visit fees incorporates the time it takes Clinicians to complete a specific non-visit related activity, constitutes payment on both a fee basis and hourly basis [Doc. No. 502–1, 12–14]. Based on this allegation, named plaintiffs assert that the PPV Plan is a "hybrid compensation system" and, therefore, is not a valid fee basis payment that would exempt them or other Clinicians from receiving overtime pay [*id.*]. Therefore, named plaintiffs assert that Gentiva owes all former and current Clinicians paid under the PPV Plan overtime compensation under the FLSA [Doc. No. 1, 22]. On April 13, 2011, this action was conditionally certified as a collective action under the FLSA, with the class consisting of all Clinicians employed three years prior to April 13, 2011 [Doc. No. 167, 11–13].

On May 26, 2011, in order to expedite this proceeding, the undersigned entered an order (the "May 26th Order") bifurcating this case into a liability phase and a damages phase [Doc. No. 194, 6]. At the close of the liability phase, both Plaintiffs and Gentiva filed dueling motions for partial summary judgment regarding the legality of the PPV Plan [Doc. No. 502, 1; Doc. No. 512, 1]. On July 26, 2013, the undersigned entered an order (the "July 26th Order") granting Plaintiff's motion for partial summary judgment and denying Gentiva's motion for partial summary judgment [Doc. No. 631, 31]. Specifically, the July 26th Order articulates the undersigned's determination that "Gentiva's non-visit fees under the PPV Plan do not satisfy the salary basis test under 29 C.F.R. § 541.605, nor do they constitute extra payments under either subsection of 29

C.F.R. § 541.604" [*id.* at 28–29]. As a result of the July 26th Order's determination regarding the legality of the PPV Plan, this action has moved into the damages phase specified in the May 26th Order.

Gentiva filed its motion to amend the July 26th Order for interlocutory appeal on August 23, 2013 [Doc. No. 634, 30]. In its motion, Gentiva requests that this Court certify for interlocutory appeal the issue of whether the non-visit fees under the PPV Plan constitute an extra payment under either subsection (a) or (b) of 29 C.F.R. § 541.604 [*id.* at 8–10].[3] Additionally, Gentiva's motion requests "that all proceedings in this Court, or alternatively, all damages discovery, be stayed pending disposition of any interlocutory appeal" [*id.* at 29]. Plaintiffs filed a response opposing this motion on September 6, 2013 [Doc. No. 636, 20]. Gentiva subsequently filed a reply in support of its motion seeking interlocutory appeal on September 23, 2013 [Doc. No. 637, 20]. Below, as it is ripe for adjudication, the Court addresses Gentiva's motion to amend the July 26th Order for interlocutory appeal.

## II. GENTIVA'S MOTION TO AMEND AND CERTIFY THE JULY 26TH ORDER FOR INTERLOCUTORY APPEAL

### A. Legal Standard

▮▮▮ 28 U.S.C. § 1292(b) provides that a district court may certify an order for interlocutory appeal if the following three elements are met: 1. the subject order "involves a controlling question of law;" 2. there must be a "substantial ground for difference of opinion" regarding the controlling question of law; and 3. an immedi-

---

state law claims are no longer a part of this action.

3. Gentiva does not request certification of the undersigned's analysis of 29 C.F.R. § 541.605 for interlocutory appeal.

ate appeal from the subject order "may materially advance the ultimate termination of the litigation." However, "[t]he proper division of labor between the district courts and the court of appeals and the efficiency of judicial resolution of cases are protected by the final judgment rule, and are threatened by too expansive use of the § 1292(b) exception to it." *McFarlin v. Conseco Servs., LLC,* 381 F.3d 1251, 1259 (11th Cir.2004). Therefore, an interlocutory appeal under 28 U.S.C. § 1292(b) is reserved for "exceptional" cases. *Caterpillar, Inc. v. Lewis,* 519 U.S. 61, 74, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996).

### B. Discussion

In its motion, Gentiva argues that this Court should certify for interlocutory appeal the following legal questions: 1. whether subsection (a) of 29 C.F.R. § 541.604 only allows "extra" compensation for hours outside an employee's normal workweek; and 2. whether a hypothetical compensation structure can be used to determine if the reasonable test under subsection (b) of 29 C.F.R. § 541.604 is satisfied. Therefore, the Court will discuss the necessity for interlocutory appeal regarding both legal questions in turn.

### 1. The undersigned will not certify the July 26th Order's interpretation and analysis of 29 C.F.R. § 541.604(a) for interlocutory appeal

■ In the July 26th Order, the undersigned determined that the "extra" compensation articulated under subsection (a) of 29 C.F.R. § 541.604 concerns payment received in addition to an employee's pay for a normal 40 hour workweek [Doc. No. 631, 23]. Therefore, as Gentiva's non-visit fees are not designated as separate from the Clinicians' 40 hour workweek, the July 26th Order articulates that Gentiva's non-visit fees do not constitute an extra payment under subsection (a) of 29 C.F.R.

§ 541.604. In its motion, Gentiva concedes that "extra compensation [under subsection (a) ] may be for hours worked beyond the normal workweek" [Doc. No. 634, 14–15]. However, Gentiva also argues that compensation beyond an employee's 40 hour workweek "is not the 'only' basis for paying extra compensation contemplated under [subsection (a) ]" [*id.* at 15]. In support of this argument, Gentiva highlights the following examples of "extra" compensation highlighted in subsection (a):

> Thus, for example, an exempt employee guaranteed at least $455 each week paid on a salary basis may also receive additional compensation of a one percent commission on sales. An exempt employee also may receive a percentage of the sales or profits of the employer if the employment arrangement also includes a guarantee of at least $455 each week paid on a salary basis. Similarly, the exemption is not lost if an exempt employee who is guaranteed at least $455 each week paid on a salary basis also receives additional compensation based on hours worked for work beyond the normal workweek.

29 C.F.R. § 541.604(a). Based on this language, Gentiva asserts that "[t]he legal question presented [by the July 26th Order] is whether inclusion of the third specific example in the regulation was intended to exclude compensation for work performed during the normal workweek from the definition of extra compensation, thus destroying the exemption when extra compensation is paid for work performed during the normal workweek" [Doc. No. 634, 16–17].

As an initial matter, the undersigned recognizes that "extra" compensation for hours worked beyond the normal workweek is not the *only* form of additional payment contemplated by subsection (a). The examples of "commission" or "per-

centage of sales" articulated in subsection (a) illustrate this point. However, the July 26th Order did not *directly* address these other forms of extra compensation as they are irrelevant to the compensation at issue in this action. The issue presented here, in regards to subsection (a), is whether a form of payment, which does not satisfy the salary basis test, for *hours* worked can constitute a form of "extra" payment when provided as part of an employee's normal 40 hour workweek.[4] The last example articulated in subsection (a) illustrates that the answer to this question is clearly "no." Therefore, the undersigned clarifies that the July 26th Order holds that payment solely *for time worked* is only considered "extra" compensation under subsection (a) if said payment concerns time worked beyond the normal 40 hour workweek.

Subsection (a) of 29 C.F.R. § 541.604 clearly contemplates payment beyond an employee's compensation for his 40 hour workweek, i.e. "extra" or "additional" payment. Specifically, subsection (a) states that an employee can receive "additional compensation without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly-required amount paid on a salary basis." 29 C.F.R. § 541.604(a). Based on this clear and unambiguous language, subsection (a) allows for "extra" payment only if an employee's compensation for his forty hour workweek satisfies the salary basis test. *See Evenson v. Hartford Life & Annuity Ins. Co.*, 244 F.R.D. 666, 667 (M.D.Fla.2007) ("As a general rule of interpretation, the plain meaning of a regu-

lation governs."). Here, Gentiva asks that the Eleventh Circuit Court of Appeals determine "whether extra compensation can be paid for hours worked during the normal workweek" [Doc. No. 634, 18]. In summary, Gentiva asserts that there is a legal question as to whether an employee can receive pay that does not satisfy the salary basis test for hours included in a normal 40 hour workweek without losing the exemption for overtime pay. However, such a payment scheme would obviously contradict and violate the clear language of subsection (a). As the undersigned articulated in the July 26th Order, "payment [for hours considered part of an employee's forty hour workweek] that does not satisfy the salary basis test would not be 'extra' payment for 'additional' work. Instead, such compensation would simply be improper payment for a forty hour workweek" [Doc. No. 631, 23–24]. In summary, a payment regarding the hours an employee works can obviously only be considered "extra" payment under subsection (a) if it concerns compensation beyond the hours worked in a 40 hour workweek. An employer cannot simply classify compensation for certain hours of a 40 hour workweek that do not satisfy the salary basis requirement as "extra" payment under subsection (a). Such a reading of this regulation would effectively negate an employer's duty to offer compensation for a full 40 hour workweek that satisfies the salary basis requirement articulated in 29 C.F.R. § 541.300(a)(1).

■ In support of its argument regarding the interpretation of subsection (a), Gentiva asserts that "any *additional* com-

---

4. Subsection (a) states that an employee can receive "additional compensation based on hours worked for work beyond the normal workweek." 29 C.F.R. § 541.604(a). Obviously, "common sense as well as the purpose of the FLSA supports the interpretation that the words 'the normal workweek' clearly con-

template a forty (40) hour workweek because the FLSA itself generally establishes the right to overtime for hours worked in excess of forty (40) hours." *Anani v. CVS RX Servs., Inc.*, 788 F.Supp.2d 55, 67 (E.D.N.Y.2011) (internal quotation marks, alterations, and citation omitted).

pensation paid to an employee during the normal workweek should not destroy the exemption as long as the employee receives a non-deductible minimum guaranteed salary form of payment" [Doc. No. 634, 18]. However, the line of reasoning that an employee can receive any form of payment so long as he receives the minimum guaranteed amount of salary payment is more applicable to the language provided in subsection (b). Specifically, subsection (b) states an employee can receive any form of payment without losing the overtime exemption so long as "the employment arrangement also includes a guarantee of at least the minimum weekly required amount paid on a salary basis regardless of the number of hours, days or shifts worked, and a reasonable relationship exists between the guaranteed amount and the amount actually earned." 29 C.F.R. § 541.604(b). In short, subsection (b) states that an employee can receive any form of compensation so long as he is guaranteed at least $455 dollars a week and said compensation satisfies the "reasonable relationship" test. *Anani*, 788 F.Supp.2d at 65. Here, Gentiva argues that any form of payment can be labeled "extra" compensation under *subsection (a)* so long as an employee is guaranteed payment of $455 a week. Obviously, such an interpretation of subsection (a) would effectively negate the "reasonable relationship" test provided in subsection (b). Therefore, Gentiva's argument that compensation can be labeled "extra" compensation under subsection (a) so long as an employee is guaranteed $455 a week is without merit. *See United States v. Sicu-*

*rella,* 834 F.Supp. 621, 624–25 (W.D.N.Y. 1993) (stating that one subsection of a statute cannot be read in a manner that negates the necessity of another subsection). Therefore, the undersigned determines that there is not a "substantial ground for difference of opinion" regarding the interpretation of 29 C.F.R. § 541.604(a).[5]

The examples of "commission" and "percentage of sales" articulated in subsection (a) do not dissuade the undersigned's determination. As explained in subsection (a), both of the aforementioned examples only become relevant if an employee is guaranteed "at least $455 each week paid on a salary basis." 29 C.F.R. § 541.604(a). Therefore, under subsection (a), an employee can only receive commission or percentage of sales without losing the overtime exemption if he is guaranteed payment for a 40 hour workweek that satisfies the salary basis test. As described in subsection (a), commission or percentage of sales are not forms of payment received in lieu of compensation for a 40 hour workweek that satisfies the salary basis test. In fact, commission and percentage of sales are not examples of payment for *hours worked* at all. Instead, commission and percentage of sales payments are forms of compensation an employee can receive in "addition" to payment that satisfies the salary basis test for hours worked.

Gentiva does not show there is a substantial ground for difference of opinion regarding the undersigned's interpretation

**5.** Gentiva further argues that interlocutory appeal is necessary because the exclusion of compensation for work hours performed during a normal workweek under subsection (a) "has never been decided" [Doc. No. 634, 17]. However, "the mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate

a substantial ground for difference of opinion." *Flor v. BOT Fin. Corp. (In re Flor)*, 79 F.3d 281, 284 (2d Cir.1996). Therefore, for the reasons explained *supra*, the undersigned determines there is no substantial ground for difference of opinion regarding the interpretation of subsection (a).

of subsection (a) in the July 26th Order. Again, compensation for hours worked during a normal workweek cannot be considered "extra" payment under subsection (a). Subsection (a) only considers compensation as "extra" or "additional" if it concerns payment beyond what an employee receives for a normal 40 hour workweek. Accordingly, the undersigned will not certify the July 26th Order's interpretation of 29 C.F.R. § 541.604(a) for interlocutory appeal.

**2. The undersigned will not certify the July 26th Order's interpretation and analysis of 29 C.F.R. § 541.604(b) for interlocutory appeal**

■ In the July 26th Order, the undersigned determined that Gentiva's non-visit fees do not satisfy the reasonable relationship test articulated by subsection (b) and, therefore, are not "extra" payments under said subsection [Doc. No. 631, 27–28]. In its motion for interlocutory appeal, Gentiva states that "the reasonable relationship test [under subsection (b)] is determined by examining actual compensation" [Doc. No. 634, 22]. Gentiva further asserts that the determination articulated in the July 26th Order regarding the applicability of subsection (b) was made "by assuming and applying a factually unsupported hypothetical compensation scenario" [*id.* at 23]. Therefore, Gentiva maintains the issue that should be certified for interlocutory appeal is "whether in performing the mathematical analysis to determine whether the reasonable relationship test has been satisfied, the focus should be on comparing *actual* guaranteed compensation to *actual* total compensation rather than a *hypothetical* compensation scenario" [*id.*].

Subsection (b) allows an employee to receive any form of compensation without losing the overtime exemption so long as he is guaranteed at least $455 a week and his weekly compensation satisfies the "rea-

sonable relationship" test. *Anani*, 788 F.Supp.2d at 65. Subsection (b) provides that "[t]he reasonable relationship test will be met if the weekly guarantee is roughly equivalent to the employee's usual earnings at the assigned hourly, daily or shift rate for the employee's normal scheduled workweek." 29 C.F.R. § 541.604(b). Again, as highlighted in the July 26th Order, Gentiva's motion for partial summary judgment simply argues that its non-visit fees constitute lawful "extras" under 29 C.F.R. § 541.604. However, this motion does not articulate whether Gentiva's non-visit fees constitute "extras" under subsection (a) or subsection (b). Beyond this deficiency, Gentiva's 65 page brief in support of its motion for partial summary judgment does not even reference the "reasonable relationship" test under subsection (b), let alone include an argument that the PPV Plan satisfies said test. Further, Gentiva's partial summary judgment motion does not articulate what amount of compensation its Clinicians are guaranteed on a weekly basis under the PPV Plan, nor does said motion articulate the Clinicians' normal amount of weekly compensation. Given these deficiencies, Gentiva's motion for partial summary judgment clearly fails to establish its non-visit fees constitute "extra" payments under subsection (b).

Rather than deny Gentiva's motion for partial summary judgment for the aforementioned deficiencies, the undersigned analyzed whether the non-visit fees constitute "extra" compensation under subsection (b) on the merits of the arguments, however flawed, presented by Gentiva. Again, Gentiva's motion does not specify the amount of compensation its Clinicians are guaranteed in a given week, nor does Gentiva' motion articulate its Clinicians' normal amount of weekly compensation. However, in responding to Plaintiffs' assertion that the PPV Plan does not guar-

antee Clinicians $455 a week, Gentiva states in its reply brief supporting its motion for partial summary judgment that:

fee-based employees need not be guaranteed pay of at least $455 per week to be eligible for extras under section 541.604, they only need to be guaranteed fees that pay them at a rate that would result in at least $455 if they were to work a full 40–hour week performing those fee-compensated tasks.

[Doc. No. 617,25]. As noted in the July 26th Order, this argument that Clinicians do not actually need to even be guaranteed $455 a week for purposes of 29 C.F.R. § 541.604 analysis appears to concede the point that Clinicians are not guaranteed $455 a week under the PPV Plan. Further, while failing to assert the normal amount of weekly compensation its Clinicians receive under the PPV Plan, Gentiva states in its motion for partial summary judgment that "the more productive opt-in clinicians in this action were able to earn more than $150,000 per year, and one plaintiff earned over $240,000" [Doc. No. 512–1, 15]. In summary, Gentiva only provided the undersigned with the following information relevant to a determination on whether the PPV Plan's non-visit fees satisfy the reasonable relationship test: 1. Clinicians are not guaranteed $455 a week; and 2. the annual income of the "more productive" Clinicians ranges anywhere from $150,000 to $240,000.

Based on this limited data *presented by Gentiva in its motion for partial summary judgment,* the undersigned determined that the PPV Plan's non-visit fees do not satisfy the reasonable relationship test. Specifically, the July 26th Order states that "[t]o earn this amount of com-

pensation [between $150,000 and $240,000] in a given year, Clinicians have to receive a weekly amount of earnings that greatly exceeds $455, let alone an undetermined amount that is less than $455" [Doc. No. 631, 27].[6] Therefore, the Court did not make its determination regarding the application of subsection (b) on a "hypothetical compensation scenario" as Gentiva asserts in its motion for interlocutory appeal. Instead, the undersigned's determination was made based on "the compensation framework put forth by Gentiva" [*id.* at 27–28]. More specifically, this determination was made pursuant to the information maintained in Gentiva's motion for partial summary judgment.

As a general matter, the undersigned does not believe that analysis of subsection (b) should be made pursuant to a "hypothetical" compensation scenario. The undersigned further believes there is no substantial grounds for difference of opinion regarding this point. In characterizing the undersigned's application of subsection (b) in the July 26th Order as based on a hypothetical compensation scheme, Gentiva is simply attempting to correct the errors made in its own motion for partial summary judgment.

Again, Gentiva's motion for partial summary judgment contains the following deficiencies: 1. fails to make a distinction between subsection (a) and subsection (b) in 29 C.F.R. § 541.604; 2. to the extent Gentiva argues the non-visit fees constitute "extras" under subsection (b), the motion fails to address how the Clinicians' compensation satisfies subsection (b)'s reasonable relationship test; and 3. to the extent Gentiva argues the non-visit fees constitute "extras" under subsection (b), thereby

---

**6.** The undersigned further notes in the July 26th Order that Plaintiffs assert the Clinicians' average annualized earnings are $74,649.70. As expressed in the July 26th Order, Clinicians would still have to receive weekly earning that do not have a reasonable relationship to $455 in order to receive annual compensation in the amount of $74,649.70.

necessitating analysis of subsection (b)'s reasonable relationship test, the motion fails to articulate the Clinicians' "guaranteed" and "usual" amount of weekly compensation. Without acknowledging these errors, Gentiva attempts to characterize the analysis in the July 26th Order as creating a legal issue concerning the use of a hypothetical compensation scheme in applying the reasonable relationship test of subsection (b). However, in its mis-characterization of the undersigned's analysis, Gentiva is, in essence, merely arguing that the undersigned did not appropriately consider evidence and arguments that Gentiva itself failed to present. The undersigned will not overburden the Eleventh Circuit Court of Appeals with an interlocutory appeal regarding a dubious legal question on which there is no substantial ground for a difference of opinion.

Further, an interlocutory appeal concerning whether subsection (b) can be analyzed under a hypothetical compensation scheme devoid of an applicable basis from the record, will not materially advance the ultimate termination of this litigation. As explained *supra*, the undersigned's analysis was not based on a hypothetical compensation scenario but was based on material in the arguments presented by Gentiva in its motion for partial summary judgment. Therefore, a determination on whether subsection (b) can be analyzed under a hypothetical compensation scenario is irrelevant to this action. In addition, assuming *arguendo* that the Court of Appeals determines the undersigned's subsection (b) analysis was based on a hypothetical compensation scheme, the evidence presented by Gentiva would still fail to show that the PPV Plan satisfies the reasonable relationship test. Again, Gentiva fails to articulate the Clinicians' "guaranteed" and "usual" amounts of weekly compensation. Therefore, any argument that Gentiva's non-visit fees constitute "extra" payment under subsection (b) could be denied on this basis alone. If the Court of Appeals determines the undersigned overreached in attempting to apply the reasonable relationship test based on the sparse factual information provided by Gentiva, the undersigned's error would have been attempting to apply the reasonable relationship test at all given the deficiencies in Gentiva's motion. As a result, even if the Court of Appeals determined the undersigned used a hypothetical compensation scheme in its subsection (b) analysis, Gentiva's motion for partial summary judgment would still fail to establish its non-visit fees are "extras" under subsection (b). Therefore, the undersigned will not certify the July 26th Order's interpretation of 29 C.F.R. § 541.604(b) for interlocutory appeal.

In summary, Gentiva has not met its burden of establishing the exceptional circumstances necessary for the undersigned to certify the July 26th Order for interlocutory appeal. Accordingly, Gentiva's Motion to Amend and Certify the Court's July 26, 2013 Order for Interlocutory Appeal [Doc. No. 634] is hereby **DENIED**.

## III. DEADLINES REGARDING GENTIVA'S FUTURE MOTION FOR DECERTIFICATION OF PLAINTIFFS' FLSA CLAIMS

As noted *supra*, this action was conditionally certified as a collective action under the FLSA on April 13, 2011. In their Joint Preliminary Report and Discovery Plan [Doc. No. 635], both parties concede that Gentiva will file a motion seeking decertification of the collective action. However, the parties do not agree on the deadline the undersigned should set for such a motion.

The undersigned acknowledges that this action's damages phase presents several

unique and difficult issues concerning the scope of discovery remaining in this action. The Court further notes that, as a result of these issues, the parties disagree on the length and scope of discovery that should be permissible during this action's discovery phase. The damages phase's discovery issues are even more complex when considered without knowledge on whether this matter will ultimately proceed as a collective action. As a ruling on Gentiva's motion for decertification will significantly clarify the scope of this litigation going forward, the undersigned believes a ruling on such a motion should occur as quickly as possible. Once it is determined whether this action will proceed as a collective action, the undersigned and the parties will have a much clearer understanding of the discovery necessary for this action's damages phase.

In the parties joint preliminary report and discovery plan concerning the damages phase, Gentiva states the following: "[d]uring the liability phase of this action, sufficient discovery has already been completed for purposes of decertification and the record is ripe for the determination as to whether [P]laintiffs' FLSA claims should continue to proceed as a collective action" [Doc. No. 635, 16]. As a result, the undersigned does not believe there is any reason to delay ruling on such a motion that will greatly impact the scope of this action moving forward. Accordingly, Gentiva is hereby **DIRECTED** to file a motion to decertify this case as a collective action within **30 days** from the date of this order. Any response or reply regarding Gentiva's motion to decertify must be filed in accordance with the deadlines articulated under Local Rule 7.1. In ruling on Gentiva's motion to decertify, the undersigned will also set forth the scope and timing of the damages phase's discovery period. The undersigned further **CLARIFIES** that discovery is **STAYED** in this action until the Court rules on Gentiva's motion to decertify.

## IV. CONCLUSION

For the above stated reasons, Gentiva's Motion to Amend and Certify the Court's July 26, 2013 Order for Interlocutory Appeal [Doc. No. 634] is hereby **DENIED.**

Gentiva is hereby **DIRECTED** to file a motion to decertify this case as a collective action within **30 days** from the date of this order. Any response or reply regarding Gentiva's motion to decertify must be filed in accordance with the deadlines articulated under Local Rule 7.1. In ruling on Gentiva's motion to decertify, the undersigned will also set forth the scope and timing of the damages phase's discovery period. The undersigned further **CLARIFIES** that discovery is **STAYED** in this action until the Court rules on Gentiva's motion to decertify.