Lisa **RINDFLEISCH**; Tiffany Melendez; Michelle Gentile; Laurie Baker; and Christina Nelmes, on behalf of themselves and others similarly situated, Plaintiffs,

v.

**GENTIVA HEALTH SERVICES, INC., Defendant.**

Civil Action No. 1:10–CV–03288–SCJ.

United States District Court, N.D. Georgia, Atlanta Division.

Signed April 18, 2014.

Abigail E. Shafroth, Christine E. Webber, Cohen Milstein Hausfeld & Toll, Washington, DC, Gilda A. Hernandez, The Law Offices of Gilda A. Hernandez, Apex, NC, Samuel L. Starks, Martin & Jones, Atlanta, GA, Walter M. Wood, H. Forest Horne, Jr., Martin & Jones, Raleigh, NC, J. Douglas Richards, Cohen Milstein Hausfeld & Toll, New York, NY, for Rindfleisch et al.

A. Michael Weber, Pro Hac Vice, Littler Mendelson, PC, New York, NY, Michael S. McIntosh, Pro Hac Vice, Littler Mendelson, PC, McLean, VA, Steven Wright Lik-

ens, Pro Hac Vice, Littler Mendelson, P.C., Memphis, TN, Christine E. Webber, Cohen Milstein Hausfeld & Toll, Washington, DC, Angelo Spinola, Anne Marsha Mellen, Lisa A. Schreter, Marcia A. Ganz, Littler Mendelson, P.C., Atlanta, GA, for Gentiva Health Services, Inc.

### ORDER

STEVE C. JONES, District Judge.

This matter is before the Court on Plaintiffs' Motion for Leave of Court to File a Sur–Reply [Doc. No. 662], Gentiva Health Services, Inc.'s ("Gentiva") Motion for Leave to File Supplemental Brief in Support of Motion for Decertification [Doc. No. 667], Gentiva's Motion to File Under Seal Certain Exhibits Supporting its Supplemental Brief in Support of Motion for Decertification [Doc. No. 665] and Gentiva's Motion for Decertification of Collective Action Class [Doc. No. 642]. For the reasons explained in this order, Plaintiffs' motion for leave and Gentiva's motion for leave are **DISMISSED AS MOOT**, and Gentiva's motion to seal and motion for decertification are **GRANTED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Gentiva provides home healthcare services to patients throughout the United States [Doc. No. 508, 1].[1] To provide these services, Gentiva employs registered nurses and physical or occupational therapists to provide in-home healthcare to Gentiva's patients (collectively "Clinicians") [id.]. Since December of 2008, Gentiva has paid the majority of its Clinicians on a pay per-

visit plan (the "PPV Plan") [Doc. No. 586, 4–5]. Under the PPV Plan, Clinicians are paid a set fee for a "routine visit" to a patient's home ("visit fees") [id. at 14]. These visit fees do not vary based on the time it takes Clinicians to complete a specific in-home visit [id. at 15]. In addition, Clinicians under the PPV Plan are also paid on what Gentiva describes as a "flat rate" for non-visit related work ("non-visit fees") [id. at 19]. In setting the amount of non-visit fees, Gentiva factors in the amount of time it takes Clinicians to perform a specific non-visit related activity [id.].

Gentiva, believing the PPV Plan constituted a "fee basis" payment, classified all of its Clinicians compensated under the PPV Plan as professional employees exempt from overtime compensation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. [id. at 10].

On May 10, 2010, former Clinicians Lisa Rindfleisch, Tiffany Melendez, Michelle Gentile, Laurie Baker, and Christina Nelmes (collectively "named plaintiffs") filed this action, on behalf of themselves and other similarly situated individuals, against Gentiva seeking overtime wages under the FLSA [Doc. No. 1, 1].[2] In support of their FLSA claim, named plaintiffs assert that the PPV Plan, because the amount of the non-visit fees incorporates the time it takes Clinicians to complete a specific non-visit related activity, constitutes payment on both a fee basis and hourly basis [Doc. No. 502–1, 12–14]. Based on this allegation, named plaintiffs assert that the PPV Plan is a "hybrid

---

1. The Court acknowledges that Plaintiffs' statement of material facts, attached to its motion for partial summary judgment, was filed under seal. However, the Court's orders are not generally sealed. Therefore, the Court considers itself free to refer, in this unsealed order, to any matters identified in the sealed materials.

2. The complaint also asserts claims under New York and North Carolina law [id.]. These state law claims are no longer a part of this action.

compensation system" and, therefore, is not a valid fee basis payment that would exempt them or other Clinicians from receiving overtime pay [id.]. Therefore, named plaintiffs assert that Gentiva owes all former and current Clinicians paid under the PPV Plan overtime compensation under the FLSA [Doc. No. 1, 22].

On November 1, 2010, named plaintiffs filed a motion to preliminarily certify this case as a collective action under the FLSA [Doc. No. 57, 1]. In reviewing this motion, the Court acknowledged that "at least forty-three Clinicians, who have worked in at least twelve states, have consented to join this action" [Doc. No. 167, 6]. On this basis, as well as other considerations, the Court granted the named plaintiffs' motion seeking preliminary certification [id. at 13]. In granting this motion, the Court noted that the standard for *conditionally* certifying a collective action under the FLSA has been described by the Eleventh Circuit as "not particularly stringent, fairly lenient, flexible, and not heavy" [id. at 5] (internal quotation marks, alterations, and citation omitted). As a result of the Court's decision to grant named plaintiffs' motion, this action was conditionally certified as a collective action under the FLSA, with the class consisting of all Clinicians employed three years prior to April 13, 2011 [id. at 11–13].[3]

On May 26, 2011, in order to expedite this proceeding, the Court entered an order (the "May 26th Order") bifurcating this case into a liability phase and a damages phase [Doc. No. 194, 6]. At the close of the liability phase, both Plaintiffs and Gentiva filed dueling motions for partial summary judgment regarding the legality

of the PPV Plan [Doc. No. 502, 1; Doc. No. 512, 1]. On July 26, 2013, the Court entered an order (the "July 26th Order") granting Plaintiff's motion for partial summary judgment and denying Gentiva's motion for partial summary judgment [962 F.Supp.2d 1310, 1324 (N.D.Ga.2013)]. Specifically, the July 26th Order articulates the Court's determination that "Gentiva's non-visit fees under the PPV Plan do not satisfy the salary basis test under 29 C.F.R. § 541.605, nor do they constitute extra payments under either subsection of 29 C.F.R. § 541.604" [id. at 1323–24]. As a result of the July 26th Order's determination regarding the legality of the PPV Plan, this action has moved into the damages phase specified in the May 26th Order.

On November 4, 2013, the Court denied a motion filed by Gentiva seeking to amend the July 26th Order for interlocutory appeal [Doc. No. 638, 22, —— F.Supp.3d ——, ——, 2013 WL 8541675 (N.D.Ga.2013)]. In this order, the Court directed Gentiva to file any necessary motion to decertify this case as a collective action within 30 days [id.]. As directed, Gentiva filed its motion to decertify on December 4, 2013 [Doc. No. 642, 4]. Plaintiffs filed a response opposing this motion on December 20, 2013 [Doc. No. 648, 64].[4] After the Court granted its motion for an extension of time, Gentiva filed a reply brief in support of its motion for decertification on January 16, 2014 [Doc. No. 661, 57].

Plaintiffs filed a motion for leave to file a sur-reply on January 31, 2014, arguing a sur-reply is necessary in order to address

---

**3.** Currently, there are 999 Plaintiffs participating in this action.

**4.** Plaintiffs subsequently filed a motion to allow substitution of a revised response that corrects a formatting error present in their

original response [Doc. No. 655, 2]. As the revised response is identical to the original, the Court granted Plaintiffs' motion and incorporated the revised response [Doc. No. 655–2] into the record [Doc. No. 656, 2].

new arguments raised in Gentiva's reply brief supporting its motion to decertify [Doc. No. 662, 5]. In addition to filing a response opposing this motion, Gentiva has filed a motion for leave to file a supplemental brief in support of its motion for decertification [Doc. No. 667, 1]. In its motion for leave, Gentiva argues, in the event Plaintiffs' motion for leave to file a sur-reply is granted, it should be allowed to file a supplemental brief that addresses allegedly new arguments raised in Plaintiffs' proposed sur-reply [*id.* at 3]. Further, Gentiva contemporaneously filed with its motion for leave a motion to seal certain exhibits attached with its proposed supplemental brief in support of its motion for decertification [Doc. No. 665, 1].

Below, as each is ripe for adjudication, the Court addresses the motions currently pending in this action.

## II. *PLAINTIFFS' MOTION FOR LEAVE TO FILE A SUR-REPLY*

In their motion for leave to file a sur-reply, Plaintiffs argue that Gentiva's reply brief in support of its motion to decertify introduces "new arguments that were not addressed in its opening brief, including both new legal arguments, and also new citations to the record and arguments about what the record shows" [Doc. No. 662, 2]. Therefore, Plaintiffs seek leave to file a sur-reply, which is over 27 pages in length, that addresses Gentiva's allegedly new arguments.

▮ As a general rule, federal courts do not consider arguments that are presented for the first time in a reply brief. *See Herring v. Sec'y, Dep't of Corrections*, 397 F.3d 1338, 1342 (11th Cir.2005) ("As we repeatedly have admonished, arguments raised for the first time in a reply brief are not properly before a reviewing court.") (internal quotation marks, alterations, and citation omitted). This rule is particularly applicable here, as this Court allowed Gentiva's motion for decertification to greatly exceed the 25 page limitation articulated in the Local Rule 7.1D [Doc. No. 640, 1–2], thereby providing Gentiva applicable opportunity to raise all necessary arguments in support of its request for decertification. Therefore, to the extent Gentiva's reply brief raises new arguments, such arguments are not considered in the Court's review of Gentiva's motion to decertify. As no new argument raised in Gentiva's reply brief will be considered, Plaintiffs' motion for leave to file a sur-reply is rendered moot. Accordingly, in the interest of maintaining clarity in the record, Plaintiffs' Motion for Leave of Court to File a Sur-Reply [Doc. No. 662] is hereby **DISMISSED AS MOOT.**

## III. *GENTIVA'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR DECERTIFICATION AND MOTION TO SEAL CERTAIN EXHIBITS*

In its motion for leave, Gentiva requests leave of Court to file a supplemental brief in support of its motion for decertification "if the Court agrees to consider [P]laintiffs' sur-reply" [Doc. No. 667, 6]. Specifically, Gentiva seeks leave to file a supplemental brief that addresses allegedly new arguments raised in Plaintiffs' proposed sur-reply. As explained *supra*, the Court will not consider Plaintiffs' proposed sur-reply and, therefore, Gentiva's motion for leave to file a supplemental brief is rendered moot. Accordingly, in the interest of maintaining clarity in the record, Gentiva's Motion for Leave to File Supplemental Brief in Support of Motion for Decertification [Doc. No. 667] is hereby **DISMISSED AS MOOT.**

The Court acknowledges that Gentiva attaches to its motion for leave a proposed supplemental brief in support of its motion for decertification [Doc. No. 667–1]. This proposed supplemental brief includes seven exhibits, identified by Gentiva as exhibits A, B, C, D, E, F, and G [Doc. No. 667–1, 40–41]. Therefore, Gentiva contemporaneously filed with its motion for leave a motion to seal the aforementioned exhibits identified as exhibits A, B, C, D, and F [Doc. No. 665, 4]. While Gentiva's proposed supplemental brief will not be considered, the Court acknowledges that the exhibits Gentiva references in its motion to seal are currently on the docket and, therefore, will be viewable unless placed under seal. In light of this fact, the Court believes it is appropriate to place exhibits A, B, C, D, and F of Gentiva's proposed supplemental brief under seal. Accordingly, Gentiva's Motion to File Under Seal Certain Exhibits Supporting its Supplemental Brief in Support of Motion for Decertification [Doc. No. 665] is hereby **GRANTED**. The Clerk is hereby **DIRECTED** to place exhibits A, B, C, D and F of Gentiva's proposed supplemental brief [Doc. No. 666] under seal.

## IV. *GENTIVA'S MOTION FOR DE-CERTIFICATION OF COLLEC-TIVE CLASS ACTION*

### A. Legal Standard

In seeking compensation for unpaid overtime under the FLSA, an employee may bring a collective action against his employer on behalf of other "similarly situated" employees. 29 U.S.C. § 216(b). A collective action is particularly appropriate when it permits the "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged [misconduct]." *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 170, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989). Unlike class actions under Rule 23 of the Federal Rules of Civil Procedure, where all qualifying class members are party-plaintiffs unless they "opt-out" of the action, "[p]articipants in a § 216(b) collective action must affirmatively opt into the suit." *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1258 (11th Cir.2008).

As a result of this "opt-in" distinction, district courts within the Eleventh Circuit use a two-stage process when deciding whether to certify a collective action under § 216(b). *Id.* at 1260. The first stage is the "conditional certification" stage or the "notice" stage, during which time an employee must show a reasonable basis that there are similarly situated employees, i.e. potential class members, that should be given notice of the action. *Id.* at 1260–61. Again, at the notice stage, courts in the Eleventh Circuit, relying on the pleadings and affidavits submitted by the parties, apply a "fairly lenient standard" that "typically results in 'conditional certification' of a representative class." *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir.2001). After conditional certification, potential class members receive notice and an opportunity to opt into the class. *Id.*

The second stage occurs towards the close of discovery, and is generally precipitated by an employer's motion for decertification. *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 953 (11th Cir.2007). At this second stage, as discovery is largely complete, "the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question." *Id.* (citation omitted). Based on the more extensive factual record, the "similarly situated" standard at the second stage is "less lenient, and the [employee] bears a heavier burden." *Morgan*, 551 F.3d at 1261. The Eleventh Circuit has yet "to draw bright lines in defin-

ing 'similarly situated'" for the second stage of collective action certification. *Briggins v. Elwood TRI, Inc.,* 882 F.Supp.2d 1256, 1262–63 (N.D.Ala.2012) (citing *Morgan,* 551 F.3d at 1261). However, while not articulating a set standard, the Eleventh Circuit has identified the following three factors when considering the "similarly situated" issue at the second stage: "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendants that appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *Anderson,* 488 F.3d at 953 (alterations and citation omitted). Ultimately, the decision on whether or not to decertify a collective class action "rests largely within the district court's discretion." *Id.*

### B. Discussion

■ To satisfy the "similarly situated" standard regarding a collective action, Plaintiffs must establish, *inter alia, "liability* on a class-wide basis." *Briggins,* 882 F.Supp.2d at 1267 (emphasis in original). Again, Plaintiffs seek overtime wages under the FLSA for every Clinician employed by Gentiva three years prior to April 13, 2011. However, the FLSA provides that an employee is only entitled to overtime for each hour worked in excess of forty in a given week. 29 U.S.C. § 207(a)(1). In summary, Gentiva is only liable to Clinicians that it employed three years prior to April 13, 2011, were paid under the PPV Plan, and who worked over 40 hours in a given week during their employment with Gentiva.

■ In its motion to decertify, Gentiva argues, *inter alia,* that decertification is necessary as individual inquiries are necessary to determine the amount of hours each Plaintiff worked. Gentiva asserts that such inquiries speak not only to the issue of damages but, more importantly, also concern the threshold question of liability as "its records show that the vast majority of [P]laintiffs averaged fewer than 40 hours a week, and nearly one-third of the [P]laintiffs *never* worked over 40 hours" [Doc. No. 642–1, 5](emphasis in original). In response, Plaintiffs concede that some members of the collective class did not work over 40 hours in a week, arguing instead that "there is simply no rule that to proceed collectively [P]laintiffs need to prove that every last opt-in worked over 40 hours" [Doc. No. 655–2, 41].

■ Plaintiffs' argument that not every Plaintiff has to actually be owed overtime compensation in a collective action solely seeking overtime damages is without merit. As articulated in *Briggins,* a collective action is improper when actual liability cannot be established on a class-wide basis. This makes logical sense, as members of a collective action that fail to maintain class-wide liability cannot be "similarly situated" as demonstrated by the factors articulated in *Anderson.*

■ Specifically, as a general rule, a group of opt-in plaintiffs cannot be similarly situated for purposes of a collective action when individual determinations regarding liability must be made. *See Reich v. Homier Distrib. Co., Inc.,* 362 F.Supp.2d 1009, 1013–14 (N.D.Ind.2005) (collecting cases). Here, the fact that some Plaintiffs did not actually work overtime hours, creates a disparate factual setting among the individual Plaintiffs as the issue of liability is not susceptible to common proof. Put more simply, the Court cannot envision a more pertinent disparate factual setting, for purposes of the similarly situated inquiry, among a group of Plaintiffs than the fact that some members of the group do not actually have a viable claim in the action at issue. Further, this distinction

obviously creates individual defenses on liability in regards to every Plaintiff that did not actually work overtime. In summary, as certain Plaintiffs do not actually have a viable claim for overtime damages, disparate factual settings and individual defenses exist in this action.

■ Additionally, the fairness factor articulated in *Anderson* necessitates decertification. The Court cannot determine a proper amount of overtime damages if this matter proceeds as a collective action when a number of Plaintiffs did not actually work overtime while employed by Gentiva. More to the point, it would be a miscarriage of justice for Gentiva to pay overtime damages to a subset of Plaintiffs who are not actually owed any overtime damages. Likewise, it would be improper for Plaintiffs who did not work overtime to receive such damages. In essence, awarding damages for non-existent overtime hours is exactly the type of result the fairness consideration articulated in *Anderson* seeks to prevent. The Court is unwilling to allow such a result.

In summary, as they fail to establish class-wide liability, Plaintiffs are not similarly situated for purposes of a collective action based on the factors articulated in *Anderson*. Therefore, this action must be decertified.

■ While decertification is necessary for the reasons explained *supra,* the Court believes discussion on an additional argument raised by Plaintiffs merits discussion. Specifically, Plaintiffs further ar-

gue that, because Gentiva did not properly record its Clinicians' work hours, this Court should allow representative evidence to establish the amount of hours each Plaintiff worked. It is true that courts "authorize some employees to testify about the number of hours they worked and how much they were paid so that other non-testifying plaintiffs could show the same thing by inference." *Morgan,* 551 F.3d at 1278–79. Such use of representative testimony is based on the burden-shifting analysis established in *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946), *overruled on other grounds by statute,* 29 U.S.C. § 203(*o* ), *as recognized in Sandifer v. U.S. Steel Corp.,* —— U.S. ——, 134 S.Ct. 870, 187 L.Ed.2d 729 (2014), although "*Mt. Clemens* never used the term 'representative testimony[.]' " *Id.* at 1278.[5] However, *Mt. Clemens* makes clear that its burden-shifting analysis is only applicable when damages are certain and "[t]he uncertainty lies only in the amount of damages arising from the statutory violation by the employer." *Id.* Therefore, representative testimony regarding hours worked to determine an amount of damages is inappropriate when the issue of liability, i.e. whether or not any damages actually exist, is still in question in regards to certain Plaintiffs. *Id.* (stating that "the rule that precludes the recovery of uncertain and speculative damages ... applies only to situations where the fact of damage is itself uncertain."). Therefore, the use of representative testimony to establish class-

---

5. In *Mt. Clemens,* the Supreme Court articulated a burden-shifting framework for determining overtime damages in the event an employer's time records are inaccurate or otherwise inadequate. 328 U.S. at 687–88, 66 S.Ct. 1187. Under a such a circumstance, the burden shifts to an employer to produce evidence regarding the precise amount of work performed that was not properly com-

pensated, provided that the employee "proves that he has in fact performed work for which he was improperly compensated." *Id.* at 687, 66 S.Ct. 1187. If the employer cannot satisfy this burden, "the court may then award damages to the employee, even though the result be only approximate." *Id.* at 688, 66 S.Ct. 1187.

wide damages is inapplicable in this matter.

As they cannot establish class-wide liability, Plaintiffs are not "similarly situated" and, therefore, this action should not proceed as a collective action.[6] Accordingly, Gentiva's Motion for Decertification of Collective Action Class [Doc. No. 642] is hereby **GRANTED.** The claims of all opt-in Plaintiffs are hereby **DISMISSED WITHOUT PREJUDICE.** However, this action shall proceed regarding the name plaintiffs' individual claims.

## V. *CONCLUSION*

For the above stated reasons, Plaintiffs' Motion for Leave of Court to File a Sur-Reply [Doc. No. 662] is hereby **DISMISSED AS MOOT.** Gentiva's Motion for Leave to File Supplemental Brief in Support of Motion for Decertification [Doc. No. 667] is hereby **DISMISSED AS MOOT.** Gentiva's Motion to File Under Seal Certain Exhibits Supporting its Supplemental Brief in Support of Motion for Decertification [Doc. No. 665] is hereby **GRANTED.** The Clerk is hereby **DIRECTED** to place exhibits A, B, C, D and F of Gentiva's proposed supplemental brief [Doc. No. 666] under seal.

Gentiva's Motion for Decertification of Collective Action Class [Doc. No. 642] is hereby **GRANTED.** The claims of all opt-in Plaintiffs are hereby **DISMISSED WITHOUT PREJUDICE.** However, this action shall proceed regarding the name plaintiffs' individual claims.

---

6. As it determines this action should be decertified on the basis that Plaintiffs cannot establish class-wide liability, the Court does not need to address the other arguments raised in Gentiva's motion for decertification.